357 F.2d 794
 Alex L. ROSEN, Petitioner,
v.
Honorable Sidney SUGARMAN, Judge of the United States District Court for the Southern District of New York, Respondent.
 Docket 30202.
 Docket 30267.
 United States Court of Appeals Second Circuit.
 Argued January 24, 1966.
 Decided March 4, 1966.
 
 Alex L. Rosen, New York City, pro se.
 Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York (Arthur S. Olick and Ezra H. Friedman, Asst. U. S. Attys., of counsel), for respondent, Judge Sugarman.
 Charles Seligson, Examiner, and Melvin L. Robbins, New York City, respondents.
 Before FRIENDLY and HAYS, Circuit Judges, and DOOLING, District Judge.*
 FRIENDLY, Circuit Judge:
 
 
 1
 This is yet another chapter in the extensively litigated reorganization of Nazareth Fairgrounds & Farmers' Market, Inc., under Chapter X of the Bankruptcy Act, which has been pending in the District Court for the Southern District of New York for over twelve years. A plan of reorganization having been confirmed in July 1965, Judge Sugarman, who has been in charge of the proceedings almost since their inception, began hearings with respect to allowances on October 19. One of the applications was that of Alex L. Rosen, Esq., attorney for the debtor in possession. On November 22, Mr. Rosen filed an affidavit for disqualification pursuant to 28 U.S.C. § 144, alleging that Judge Sugarman had a personal bias and prejudice against him; the affidavit prayed that the judge proceed no further and that another judge be assigned. Judge Sugarman declined to disqualify himself, and Rosen sought review both by appeal and, in the alternative, by petition for mandamus or prohibition.
 
 I.
 
 2
 We confront at the outset the question whether we have jurisdiction either to entertain the appeal or to issue a writ. Rather obviously an order refusing disqualification is not a "final decision," 28 U.S.C. § 1291, in the broad sense of bringing the litigation to an end. Neither is it "final" in the more limited sense that unless it is reviewed now, by the very nature of things it never can be; the issue would remain open on an appeal from an order fixing allowances if one were permitted. See Bankruptcy Act § 250. The argument for appealability thus must rest on a claim that, nonetheless, an order of a judge refusing to disqualify himself falls "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). The argument is not altogether unpersuasive, especially in this context where appeal from a final decision on the merits will not lie as of right. Dickinson Industrial Site, Inc. v. Cowan, 309 U.S. 382, 60 S.Ct. 595, 84 L.Ed. 819 (1940). However, since we conclude that we have power to issue mandamus, which is better adapted to prompt disposition of such claims, we are content to disregard the contrary intimation in In re Lisman, 89 F.2d 898 (2 Cir. 1937), and join other courts of appeals in holding that an order denying an application for disqualification of a judge is not a final decision appealable under 28 U.S.C. § 1291. Collier v. Picard, 237 F.2d 234 (6 Cir. 1956); General Tire & Rubber Co. v. Watkins, 331 F.2d 192, 198 (4 Cir.), cert. denied, 377 U.S. 952, 84 S.Ct. 1629, 12 L.Ed.2d 498 (1964). The order thus being interlocutory, it is plain that no appeal lies under 28 U.S.C. § 1292(a), or under 28 U.S.C. § 1292(b) in the absence of a certification by the district court and the grant of leave by us. And although interlocutory orders in proceedings in bankruptcy are often appealable under § 24 of the Bankruptcy Act without regard to the limitations of § 1292, this order is not since it does not substantially determine rights in the debtor's estate, see In re Chicago Rapid Transit Co., 200 F.2d 341, 343 (7 Cir. 1953). The appeal must therefore be dismissed.
 
 
 3
 The Examiner, appointed by Judge Sugarman under § 168 of the Bankruptcy Act,[1] insists that mandamus likewise is never available to direct a judge to recuse himself, and the Assistant United States Attorney appearing on the judge's behalf says that it "ordinarily" is not. We have held that in an appropriate case mandamus could issue to order such disqualification, In re Lisman, supra; Foster v. Medina, 170 F.2d 632 (2 Cir. 1948), cert. denied, 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442 (1949) — a view supported by a majority of the circuits. See Hurd v. Letts, 80 U.S.App. D.C. 233, 152 F.2d 121 (1945); In re Union Leader Corp., 292 F.2d 381 (1 Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); Henry v. Speer, 201 F. 869 (5 Cir. 1913); Minnesota & Ontario Paper Co. v. Molyneaux, 70 F.2d 545 (8 Cir. 1934); Gladstein v. McLaughlin, 230 F.2d 762 (9 Cir. 1955); United States v. Ritter, 273 F.2d 30 (10 Cir. 1959), cert. denied, 362 U.S. 950, 80 S.Ct. 863, 4 L.Ed.2d 869 (1960). But see Green v. Murphy, 259 F.2d 591 (3 Cir. 1958);[2] Albert v. United States District Court, 283 F.2d 61 (6 Cir. 1960), cert. denied, 365 U.S. 828, 81 S.Ct. 713, 5 L. Ed.2d 706 (1961); Korer v. Hoffman, 212 F.2d 211 (7 Cir. 1954). The Supreme Court's decision in La Buy v. Howes Leather Co., 352 U.S. 249, 254-255, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), made clear that the power conferred on courts of appeals to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. § 1651(a), is not confined, as urged in the dissent in that case, to instances where the action of the district court will "frustrate or impede the ultimate exercise by the Court of Appeals of its appellate jurisdiction granted in some other provision of the law." 352 U.S. at 264, 77 S.Ct. at 317. Once the area for use of the prerogative writs is recognized to be not so narrowly restricted, we can think of few situations more appropriate for mandamus than a judge's clearly wrongful refusal to disqualify himself.
 
 
 4
 "The very special, challenging and often sensational charge of partiality in the administration of justice which is initiated by a formal affidavit of prejudice against a judge should receive final adjudication at first opportunity, if only in the interest of public confidence in the courts. Moreover, a trial is not likely to proceed in a very satisfactory way if an unsettled claim of judicial bias is an ever present source of tension and irritation. Only a final ruling on the matter by a disinterested higher court before trial can dispel this unwholesome aura. Thus, if an appellate court refuses, when properly petitioned, to prevent a disqualified judge from trying a case, or to say that the challenged judge is not disqualified, this postponement of decision hurts the administration of justice, even though the court reserves the right to pass upon the matter after trial. Such considerations far outweigh the objections to piecemeal appeals which ordinarily militate against deciding on mandamus an issue which can be reviewed after trial. Another normal objection to mandamus, its character as a challenge addressed to the judge himself, has no force here because the affidavit of prejudice has already challenged the judge in the most personal way imaginable." Green v. Murphy, supra, 259 F.2d at 595 (Hastie, J., concurring).
 
 
 5
 To be sure, writs in such cases should be issued sparingly and only when the facts alleged clearly call for relief, lest mandamus to review refusals of disqualification become a potent weapon for harassment and delay. However, it would ill serve the proper administration of justice to deny the power of an appellate court to issue the writ in an appropriate case.
 
 II.
 
 6
 The principles governing the disposition of affidavits for disqualification under what is now 28 U.S.C. § 144 were laid down in Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). Although the facts stated in the affidavit are to be taken as true, the judge may inquire into their legal sufficiency. Indeed he must do so. There is "as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is," In re Union Leader Corp., 292 F.2d 381, 391 (1 Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); see also Tucker v. Kerner, 186 F.2d 79, 85 (7 Cir. 1950) — an obligation especially strong in a case like the present where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience. To be sufficient an affidavit must show "the objectionable inclination or disposition of the judge"; it must give "fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." 255 U.S. at 33-35, 41 S.Ct. at 233.
 
 
 7
 Application of these principles, not easy in any case, is peculiarly difficult when the bias and prejudice are alleged to have stemmed not from any history antecedent to the litigation or from the judge's contacts outside the courtroom, but from conflicts arising in the course of the very proceeding in which his impartial decision must be made. The task is even more delicate where, as here, the issue before the judge is the award of allowances to an attorney claiming bias, where the attorney's conduct in the prior proceeding is relevant to that determination and the attorney's own interests are at stake. A judge is not to be faulted as biased or prejudiced because he has considered that the effective discharge of his responsibility over proceedings before him, a responsibility particularly great in a reorganization case, has demanded the consistent rejection of an attorney's contentions or strong measures to prevent what he regards as inexcusable waste of time. Moreover, an occasional display of irritation, usually regretted as soon as made, does not suffice to show personal bias or prejudice, whether the irritation was justified or not. On the other hand, even when a judge's initial adverse reaction to a lawyer may have stemmed from reasons that were legitimate or at least understandable, it is undeniable that if such an antipathy has crystallized to a point where the attorney can do no right, the judge will have acquired "a bent of mind that may prevent or impede impartiality of judgment," at least in a matter where the attorney's private interests are at stake. See Whitaker v. McLean, 73 App.D.C. 259, 118 F.2d 596 (1941).
 
 
 8
 Rosen insists this is what occurred here. His affidavit quoted as indicative of personal hostility a number of passages from the transcript of the reorganization proceeding,[3] and then presented two specific episodes as demonstrating personal bias against him in the allowance proceeding. If the former passages were to be taken at face value, they would indeed exhibit a bent of mind fatal to impartiality of judgment, and they are far from pleasant reading. But the exhumation of these episodes from the long history of a toilsome case serves rather as a chastening reminder of how easily impatience in a judge, even if understandable, can produce the appearance of unfairness. Indeed, Rosen himself relies on these incidents primarily as background for the episodes in the hearing on allowances.
 
 
 9
 At least one of these was the result of bitterness that had developed in the course of the protracted reorganization proceedings between Rosen and an opposing attorney, Melvin L. Robbins, Esq., retained in October 1956 on behalf of a tenant of the debtor who was endeavoring to acquire a majority of its stock. See Weinstein v. Wolf, 296 F.2d 678, 680 (2 Cir. 1961), rev'd, 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963). Most of the stock purchased by Robbins was, according to Rosen's affidavit, that of persons who had not given any present consideration to the promoter of the venture, and was invalidated by us on that account in an opinion which reversed the district judge and was largely consistent with the position Rosen urged upon us.[4] Fried v. Margolis, 296 F.2d 670 (2 Cir. 1961), cert. dismissed as improvidently granted, 372 U.S. 633, 636, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963). Apparently the two lawyers grated on each other in an unusual degree. Moreover, Rosen became persuaded that there was something wrong in the relationship between Robbins and the designated Examiner, who had been Robbins' former employer and, according to Rosen, was associated with him in some other legal matters;[5] he became persuaded also that his own opposition to Robbins and his frequent references to this association lay at the root of the unpleasantness which developed between the judge and himself. In consequence, the hearings on the fee applications of Rosen, Robbins and the Examiner registered the same unduly torrid temperatures as had characterized the preceding litigation.
 
 
 10
 The first episode relates to a reopening of the record in an aspect that seemed to Rosen to offer Robbins an unwarranted opportunity to impugn evidence Rosen had adduced and, indirectly, to reflect on Rosen himself. When Rosen objected to certain testimony by Robbins, the judge warned that if Rosen persisted, "I will hold you in contempt and commit you downstairs." Completion of the objection led to a fine of $50, accompanied by a warning that unless this was paid by the next afternoon or stayed by this court, the judge would direct Rosen's commitment. Later the judge gave Rosen an opportunity to purge himself by an apology, which Rosen did. Although we fail to see any need for such an extreme measure as fine or commitment, the episode ended, as it should have, in quiet retreats on both sides under cover of an apology that allowed Rosen to preserve his position.
 
 
 11
 The other incident arose from testimony by Rosen that a record book indicating time spent on Nazareth problems over many years — together with papers relating to other professional matters, a tape recorder and an umbrella — had been stolen from his car while he was moving from one apartment to another, a loss he had promptly reported to the New York City police. A few days after the close of the hearings, the judge wrote that he was reopening them on his own motion. He called a police sergeant whom he interrogated at some length as to Rosen's report of the theft. The sergeant's contemporaneous memorandum report referred only to a recorder and an umbrella, but he emphasized, both on direct and on cross-examination, that Rosen had also reported the loss of papers valuable only to himself because they represented his work. The judge developed that the sergeant did not recall Rosen's referring to the loss of a briefcase holding some of the papers, or of a docket book, as Rosen apparently had testified, although the sergeant conceded on cross-examination that Rosen might have referred to a book. When this incident triggered the instant application, the judge wrote that he had effected the reopening in order to discharge duties imposed by this court in In re Hudson & Manhattan Railroad Company, 339 F.2d 114 (2 Cir. 1964).
 
 
 12
 This episode makes a painful impression, since it is open to the interpretation that the judge undertook to discredit Rosen's testimony about the loss of certain of his records, although in fact the inquiry had the contrary effect. Our decision in In re Hudson & Manhattan Railroad Company, supra, emphasizing the importance of lawyers' time records of services in bankruptcy proceedings, does not impose on a district judge the duty to initiate further inquiry when testimony of a lawyer of reputation, fair on its face, explains the absence of records. Taking such a course must expose the judge to just the suspicion of bias that Rosen has here entertained. Other means of obtaining further evidence on the question through Rosen were open to the judge and should have been his recourse if he had harbored any doubts concerning the veracity of Rosen's account. The course chosen was careless of that manifestation of constant impartiality which a judge should at all times preserve.
 
 
 13
 Nevertheless we cannot say that the sum of these episodes required the judge to disqualify himself, and we therefore find it unnecessary to consider the further objection that the application was untimely. If Rosen's fears should prove justified, as we trust they will not, the allowance will be open for review at our discretion.
 
 
 14
 The appeal is dismissed, and the petition for mandamus or prohibition is denied.
 
 
 
 Notes:
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 We take it that the appearance of the Examiner and of Melvin L. Robbins, Esq. in opposition to Rosen's appeal and petition are due to the fact that Rosen's affidavit was read by Judge Sugarman as asking that he recuse himself with respect to their fee applications also
 
 
 [2]
 Although theGreen decision is generally cited as barring mandamus in all disqualification cases, the concluding paragraphs of the opinion and the concurring opinion leave us uncertain whether the majority did not mean to rest the denial of mandamus on inability to find "circumstances here which would justify our issuing the writ," rather than going as far as the dissenting judge thought. Compare 259 F.2d 594 and 595, with 597; see Rapp v. Van Dusen, 350 F.2d 806, 810 (3 Cir. 1965).
 
 
 [3]
 Some examples are the judge's volunteering that when Rosen's fee application would come before him, "I am going to look at your production with a jaundiced eye"; interjecting in a dispute between Rosen and the Examiner, "I am expressing no opinion on how counsel for the debtor has disported himself in this matter. I will reserve that to such time as I give to a consideration of what his fee shall be"; and responding to a plea by Rosen that he was not trying to be smart, "If you are implying that I am trying to be smart, I assure you, sir, that you are very near contempt."
 
 
 [4]
 Some of the stock acquired for Robbins' clients had been invalidated by the district court, which had followed a report of the Examiner on this and other issues; as to this we affirmed
 
 
 [5]
 Needless to say, we are not passing on such suggestions, which Rosen has again raised on the fee applications of the Examiner and Robbins