UNITED STATES of America
v.
Lowell M. BIRRELL, Defendant.
No. 61 Cr. 692.

United States District Court
S. D. New York.

Jan. 9, 1967.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for United States, Arthur L. Liman, Sp. Asst. U. S. Atty., and Stephen L. Hammerman, Asst. U. S. Atty., of counsel.

William J. Brennan, III, New York City, for defendant, Lowell M. Birrell.

OPINION

HERLANDS, District Judge:

The defendant Lowell M. Birrell has moved, pursuant to 28 U.S.C.A. § 144,[1] to disqualify District Judge William B. Herlands (the writer of this opinion) from presiding over this case on the

---

1. Section 144 provides:

*"Bias or prejudice of judge*

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

ground that Judge Herlands (hereinafter "the Court") has a personal bias or prejudice against the defendant. The case had been referred to the Court for all purposes by an order of the Chief District Judge, dated September 27, 1966, in accordance with Rule 2 of the General Rules of United States District Courts for the Southern and Eastern Districts of New York.

The indictment herein charges the defendant Birrell and thirteen others with distributing the common stock of American Leduc Petroleums Ltd. (hereinafter "American Leduc") in violation of the registration and anti-fraud provisions of the Securities Act of 1933 (15 U.S.C.A. §§ 77e(a), 77q(a), 77x), the mail fraud statute (18 U.S.C.A. § 1341) and the general conspiracy statute (18 U.S.C.A. § 371).

The defendant's "Affidavit of Personal Bias or Prejudice" asserts that the Court has a personal bias or prejudice against him. The defendant contends that the facts and the reasons for his belief that bias or prejudice exists are contained in a statement by the Court which appears as the opening sentence of a reported opinion by the Court, in ruling upon motions in a civil action to quash certain subpoenas duces tecum, In Re Equitable Plan Co., 185 F.Supp. 57 (S.D.N.Y.1960), modified, Iags v. Ferguson, 282 F.2d 149 (2d Cir. 1960).

The sentence referred to by the defendant states:

"This action is another chapter in the attempt to unravel the affairs and make whole the victims of Lowell Birrell, presently a fugitive from justice under indictment for crimes arising out of his financial activities." 185 F. Supp. at 58.

The subject matter of the civil action giving rise to the motions to quash the subpoenas was a derivative stockholders' action for the benefit of Doeskin Products, Inc. then pending in the Supreme Court of the State of New York. The plaintiffs in that case sought the cancellation of one million shares of the stock of Doeskin Products, Inc. which had been issued to the defendants in the derivative action while Doeskin Products, Inc. was under the alleged domination of Birrell. The defendants in the derivative action were a group of Canadians who claimed to have purchased the shares of Doeskin Products, Inc. from a Latin American corporation. Neither the plaintiffs nor the defendants in the derivative action were parties to the motions before this Court.

Equitable Plan Company—a debtor in a Chapter X reorganization proceeding pending in the United States District Court for the Southern District of California and with ancillary proceedings pending in the United States District Court for the Southern District of New York—had large stockholdings in Doeskin Products, Inc. Although the trustee of Equitable Plan Company was not a party to the State Court stockholders' derivative action, the referee permitted him to participate in the hearings.

The trustee's position was that the defendants in the derivative action knew that the one million shares of Doeskin Products, Inc. (which they claimed to have purchased in good faith from the Latin American corporation) were actually held and controlled by Birrell and that the ostensible stock purchase by the defendants was, in fact, part of a scheme to continue Birrell's alleged control of and beneficial interest in Doeskin Products, Inc.

To substantiate his position, the trustee endeavored to prove that the defendants in the derivative action fraudulently cooperated with Birrell in taking $100,-000 from Doeskin Products, Inc. In order to prove this allegedly fraudulent transaction, the trustee in the ancillary proceeding in the Southern District of New York caused subpoenas duces tecum to be issued to three foreign banks requiring the production of records and documents located in branches outside the United States. The subpoenas were served at the New York agencies of the respective banks. The motions before this Court were made by the three banks to quash the said subpoenas.

Edward C. Kalaidjian, Esq., a member of the firm of Thacher, Proffitt, Prizer, Crawley & Wood, attorneys in New York for the trustee, submitted a twelve-page affidavit in opposition to the motion made by the banks. Mr. Kalaidjian also submitted an opposing memorandum of law that confined itself to an exposition of the legal issues involved.

The Kalaidjian affidavit undertook to acquaint the Court with essential background facts and details of the alleged transactions for the relevant purpose of showing that the trustee subpoenaed each of the banks "to obtain urgently needed material evidence." (Kalaidjian affidavit, pp. 3, 8). The affidavit described with particularity the transactions involved and also indicated what probable proof and what "conclusive proof" (Kalaidjian affidavit, p. 7) the trustee expected to obtain through the subpoenaed bank records, if produced for examination in the trustee's ancillary proceedings pending in the United States District Court for the Southern District of New York.

The facts recited in the Kalaidjian affidavit also relevantly showed the legitimate relationship between the subpoenas and the trustee's powers and responsibilities.[2]

In his affidavit, Mr. Kalaidjian asserted (at p. 2):

"Deponent has examined more than 25 witnesses and has taken approximately 6,000 pages of testimony to investigate and discover the wrongful acts by which approximately $8,000,000 was appropriated and converted from the Debtor by Lowell M. Birrell, a notorious financial manipulator, and by the persons and firms associated with him. Birrell, who has been indicted by grand juries in New York County and in the Southern District of New York,[3] is presently reported to be a fugitive in Brazil, with which the United States has no extradition treaty. The principal victims of the manipulations by which Birrell and his associates misappropriated approximately $8,000,000, of the Debtor's assets and funds are approximately 4,300 depositors who entrusted their uninsured savings to the Debtor on an interest-paying basis."

None of the other papers that were before the Court in connection with the motions to quash contradicted Mr. Kalaidjian's statements about Birrell and his activities.

The defendant attacks the Kalaidjian affidavit for the asserted reason that most of its contents consists of statements (including the one quoted above) that were totally unrelated to the issue of the proper service of the bank subpoenas. For the same expressed reason, the defendant argues that the statement made by the Court in the opening sentence of its opinion in In Re Equitable Plan Co., supra, was not related to the issue before the Court. Upon the foregoing premises, the defendant concludes that the Court's statement was personal and not judicial.

The fallacy underlying the defendant's premises is that neither the trustee nor the Court was required to limit himself to the naked ultimate legal issue, stripped of its factual context and background. *Ex facto jus oritur.* That important and novel legal questions should not be decided in a vacuum is a brocard.

2. The Kalaidjian affidavit (pp. 1–2) stated that an order of the United States District Court for the Southern District of New York, dated December 1, 1958, authorized the trustee to conduct ancillary proceedings for the purposes of inquiring into the acts, property, assets, liabilities, and financial condition of Equitable Plan Company; obtaining evidence of fraud and irregularities in the conduct of the business of Equitable Plan Company and evidence for use by the trustee in litigation involving the interests of Equitable Plan Company.

3. (This footnote is not part of the quotation.)
Birrell had been indicted in this court on August 25, 1959 (Indictment Number C. 159–275) and a bench warrant was issued on August 27, 1959.

The pertinency of the facts recited by the trustee and the Court was grounded upon desiderata to which this Court has already alluded in the course of this opinion.

The Court made the statement now quoted by the defendant on the basis of the clear state of the record then before the Court.

Moreover, it was the Court's opinion that important considerations of public policy favored disclosure of evidence and merited judicial consideration of the use of foreign bank accounts in the context of the foreign bank subpoena question.[4]

Because the Court regarded as significant [5] the policy aspect of the issue of the service of the foreign bank subpoenas, the Court deemed it relevant to place that issue in its factual context and frame of reference. Nothing said by the Court constituted an appraisal or judgment of Birrell's activities or character on the merits. What was said was part of the total relevant environment. It represented some of the pertinent factual premises upon which the Court predicated its resolution of the issue of the service of the foreign bank subpoenas.

The Government's opposing memorandum (p. 6) states:

"The transaction involved in the Equitable Plan case is not the subject of or in any way related to the indictment in United States v. Birrell, 61 Cr. 692."

An analysis of the present indictment shows that it is confined to certain alleged activities of Birrell and others in connection with the stock of American Leduc Petroleums Ltd.

The defendant does not claim that this Court has ever had before it any aspect of the American Leduc transactions or has passed judgment on the defendant's conduct in such transactions. The defendant's motion rests entirely on one sentence in a judicial opinion in a totally extraneous case in which the Court summarized the relevant context of the dispute before it, in reliance upon the then uncontroverted record.

■■ The Court concludes: (1) that the moving papers are insufficient because they fail to meet the statutory requirement that the defendant shall state "the facts and the reasons" for the belief that bias or prejudice exists; the defendant has stated conclusions but not facts and reasons; and (2) that the statement constituting the gravamen of the defendant's motion was the expression of a relevant judicial opinion which does not evidence any bias or prejudice whatsoever, whether personal or nonjudicial or otherwise.

The controlling principles of law have been so frequently expounded [6] that there is no present need to reiterate them.

The defendant's motion is denied. So ordered.

---

4. See In Re Equitable Plan Co., supra, 185 F.Supp. at 60, where this Court said, *inter alia:* "In the case at bar, the creation of such an exception would serve merely to hide from judicial scrutiny what *may be* a complex international theft." (Emphasis added.) See also id. at 60 n. 2.

5. Holmes, The Common Law (1881) 1: "The life of the law has not been logic: it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellowmen, have had a good deal more to do than the syllogism in determining the rules by which men should be governed."

6. See, e. g., United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); Berger v. United States, 255 U.S. 22, 33–34, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Rosen v. Sugarman, 357 F.2d 794, 797–798 (2d Cir. 1966); Foster v. Medina, 170 F.2d 632, 633 (2d Cir. 1948), cert. denied, 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442 (1949); Craven v. United States, 22 F.2d 605, 607–608 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928); Williams v. Pierce County Board of Commissioners, 267 F.2d 866, 867 (9th Cir. 1959); Freed v. Inland Empire Ins. Co., 174 F.Supp. 458, 464 (D. Utah 1959); United States v. Lattimore, 125 F.Supp. 295, 296 (D.D.C.1954); United States v. Valenti, 120 F.Supp. 80, 85–86 (D.N.J. 1954).