444 F.2d 1344
 78 L.R.R.M. (BNA) 2030, 65 Lab.Cas. P 11,909
 James D. HODGSON, Secretary of Labor, United States
Department of Labor, Appellee,
v.
LIQUOR SALESMEN'S UNION LOCAL NO. 2 OF the STATE OF NEW
YORK, DISTILLERY, RECTIFYING, WINE & ALLIED
WORKERS' INTERNATIONAL UNION OF AMERICA,
AFL-CIO, Defendant-Appellant.
 No. 1070, Docket 71-1614.
 United States Court of Appeals, Second Circuit.
 Argued July 2, 1971.
Decided July 8, 1971.
 
 Andrew T. McEvoy, Jr., New York City (Schulman, Abarbanel, Perkel & McEvoy, and Bertram Perkel, New York City, on the brief), for defendant-appellant.
 Allan B. Morrison, Asst. U.S. Atty. (Whitney North Seymour, Jr., U.S. Atty., S.D.N.Y., Daniel Riesel, Asst. U.S. Atty., New York, N.Y., and Edward F. Beane, Atty., Dept. of Labor, Washington, D.C., on the brief), for appellee.
 Before FEINBERG and MANSFIELD, Circuit Judges, and BARTELS, District Judge.*
 MANSFIELD, Circuit Judge:
 
 
 1
 In this action begun by the Secretary of Labor ('Secretary' herein) pursuant to Title IV, 402, of the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 534, 29 U.S.C. 482 ('the Act' herein), attacking an election of officers of defendant ('the Union' herein) held on January 9, 1970, the Union appeals from an order of the district court setting aside the election on the ground that the Union violated 401(g) of the Act,[1] 29 U.S.C. 481(g), and directing the holding of a new election under the Secretary's supervision, which is scheduled to be held on July 9, 1971. The order is affirmed.
 
 
 2
 The Union, which is composed of approximately 1,600 liquor salesmen employed by wholesalers, distillers and distributors in the New York metropolitan area, is chartered by the Distillery, Rectifying, Wine and Allied Workers' International Union of America, AFL-CIO ('the International' herein). One Mortimer Brandenburg is President of both the Union and the International. Beginning in 1967 certain members of the Union formed a group called the Joint Salesmen's Committee ('JSC' herein) in opposition to the Union's incumbent officers and members of its Executive Board. In 1969, after bringing two suits against the Union, JSC decided to run a slate of candidates in opposition to the incumbents in the coming election to be held in January 1970. An intense and bitter campaign followed, accompanied by attacks and by campaign literature. In the course of promoting the re-election of the incumbents, Brandenburg utilized the Union's newspaper, the Journal, and the services of its editor, Abe S. Weiss, to publish articles in its December 1969 and January 1970 issues which supported re-election of existing officers and sought the defeat of the insurgent JSC candidates, whom it attacked.
 
 
 3
 The hotly contested election, which was held on January 9, 1970, resulted in the defeat of the JSC slate and the re-election of the incumbent group of officers and Executive Board members by a narrow margin. On January 10, 1970, the JSC group filed with the Union's Executive Board a protest against election irregularities. The Union's Board, a majority of whom were re-elected incumbents, delayed action on the protest until the JSC appealed and protested to the International. Finally on March 11, 1970, the protest was denied by a letter of the Executive Board which reached the defeated candidates on March 13, 1970. By letters mailed March 16 and March 17, 1970, the JSC candidates appealed to the International. Due to the strike of United States postal workers, which began on March 18, 1970, and halted delivery of the mails, the letters were not received by the International until March 30, 1970.
 
 
 4
 By letter dated April 14, 1970, the International dismissed the appeals as untimely, taking the position that Article X, 4 of the International's Constitution required an appeal to be filed within five days after the decision of the Union's Executive Board. An election complaint was then filed by the defeated candidates with the Secretary of Labor, who, after conducting his own investigation, brought the present suit on June 12, 1970. The Amended Complaint charges that the Union violated 401(g) by (1) applying monies received by way of dues, assessments or other similar levies to promote the candidacies of certain incumbents, using the Unionfinanced publication called the Journal for such purpose, and by (2) applying monies of an employer to the candidacies of incumbents through statements of an employer, Anthony Maglico at his expense, and through articles and comments in an employer-financed publication, the Beverage Retailer Weekly.
 
 
 5
 After some preliminary sparring the case was assigned on October 15, 1970, for all purposes to Judge Motley pursuant to Rule 2 of the General Rules of the United States District Court for the Southern District of New York. The Union then moved to have Judge Motley recuse herself pursuant to 28 U.S.C. 144[2] on the basis of an affidavit of bias and prejudice submitted by the Union.
 
 
 6
 The Union's application pursuant to 144 was supported by the affidavit of its President, Mortimer Brandenburg, which, in turn, was based on an attached affidavit of one Howard Levine, dated December 16, 1970, to the effect that at a JSC meeting held more than a year previously the attorney for the JSC group, Godfrey P. Schmidt, in the course of a review of pending litigation which had been instituted by him on behalf of JSC members against the Union, stated that Judge Motley 'was good for the JSC and had an understanding for their case,' 'that he was very close to her and he would try to see that more actions would come before her where she would be presiding,' and that 'he could get favored treatment from her against the Union'. The Union did not offer an affidavit of Mr. Schmidt or of anyone else attesting to any statements or conduct on the part of Judge Motley that would support the statements attributed by Levine to Schmidt.[3] Indeed, on December 22, 1970, Schmidt appeared before Judge Motley and flatly denied the statements attributed to him by Levine.
 
 
 7
 In a decision filed on February 16, 1971, Judge Motley denied the Union's request that she recuse herself, stating that the Union's affidavit was insufficient on its face and that it failed to 'allege or set forth any statement actually made by the judge or even allegedly made by the judge, or any action taken or allegedly taken by the judge showing personal or extra-judicial bias or from which personal or extra-judicial bias may even be inferred as required by 144.' Thereupon the Union sought a Writ of Mandamus, which was denied by this Court on March 3, 1971.
 
 
 8
 During the period from March 17 to March 19, 1971, the case was tried before Judge Motley, sitting without a jury, and on May 17, 1971, she filed the court's findings and conclusions in which she held that the Secretary had proved the first claim (use of Union dues, assessments or other similar levies to promote the candidacy of incumbents through the use of the Union-financed Journal), but had failed to prove the second one. The court ordered that the January 9, 1970, election be set aside and that a new election be held on July 9, 1971.
 
 
 9
 The Union here contends (1) that Judge Motley erred in not recusing herself, (2) that the court lacked jurisdiction because of the failure of the defeated candidates to exhaust intra-union remedies as required by 402 of the Act, and (3) that the evidence adduced at trial was insufficient to establish that the Union's expenditure of funds may have affected the outcome of the election.
 
 
 10
 Turning to the first of these contentions, 144 provides that 'Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein * * *.' In order to guard against frivolous attacks it further specifies that the affidavit 'shall state the facts and the reasons for the belief that bias or prejudice exists.' Since the purpose of the section is to avoid the appearance as well as the actual existence of bias or prejudice on the part of the trial judge, the facts stated in the affidavit as the basis for the belief that bias or prejudice exists must be accepted as true by the judge even though he or she knows the statements to be false. Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1931); Rosen v. Sugarman, 357 F.2d 794 (2d Cir. 1966); Korer v. Hoffman, 212 F.2d 211 (7th Cir. 1954). However, the trial judge must at the outset determine whether the facts so stated would constitute legally sufficient grounds for recusal, Berger v. United States, supra; Rosen v. Sugarman, supra; Simmons v. United States, 302 F.2d 71, 75 (3d Cir. 1962); Albert v. United States District Court, 283 F.2d 61 (6th Cir. 1960), and if the affidavit is insufficient, he is under just as much of a duty to deny the application as he would be to recuse himself if it were sufficient. Rosen v. Sugarman, supra, 357 F.2d at 799; In re Union Leader Corp., 292 F.2d 381, 391 (1st Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). Mere conclusions, opinions, rumors or vague gossip are insufficient. Berger v. United States, supra, 255 U.S. at 34, 41 S.Ct. 230; Simmons v. United States, supra, 302 F.2d at 75. To be sufficient the affidavit must set forth facts, including the time, place, persons and circumstances, and, where based upon an extra-judicial statement of the judge, the substance of that statement. Berger v. United States, supra, 255 U.S. at 34, 41 S.Ct. 230; Wapnick v. United States, 311 F.Supp. 183, 184-185 (E.D.N.Y.1969).
 
 
 11
 Applying these time-honored standards to the present case, the affidavit in support of the application for recusal is plainly insufficient on its face. At most it sets forth conclusions and opinions expressed by Godfrey P. Schmidt, the JSC's attorney in other cases, which are unsupported by any statements of fact. At least one of the statements attributed to Schmidt-- that Judge Motley 'was good for the JSC and had an understanding for their case'-- does not imply any action or statement on the part of Judge Motley except possibly that her favorable rulings in another case between the same parties, Sheridan et al. v. Liquor Salesmen's Union Local 2 et al., D.C.,303 F.Supp. 999, provided a basis for the inference that she might rule favorably to the JSC in future cases. Inferences from a prior judicial determination, however, are insufficient grounds for recusal. Barry v. Sigler, 373 F.2d 835 (8th Cir. 1967). Only a showing of personal bias or prejudice of a nonjudicial character will suffice. United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); Hanger v. United States, 398 F.2d 91, 100-101 (8th Cir. 1968); Hodgdon v. United States, 365 F.2d 679, 686 (8th Cir. 1966), cert. denied, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967).
 
 
 12
 The further statements attributed to Schmidt-- that he 'was very close to' Judge Motley and that 'he could get favorable treatment from her against the Union'-- are vague and conclusory. They may be interpreted merely as counsel's indulgence in a bit of braggadocio in the hope of impressing a client, based upon his inflated view of his own persuasive influence as an advocate. If they were based upon some extra-judicial statement, the essential facts as to the time, place and circumstances are lacking. For instance, they fall far short of the extremely biased and inflammatory statements attributed directly to the trial judge in Berger v. United States, supra, 255 U.S. at 28-29, 41 S.Ct. 230. Indeed the Levine affidavit is devoted to conduct and statements of attorney Schmidt rather than to statements of Judge Motley. While we do not say that hearsay may not in some circumstances constitute a basis for recusal, the fact that an application is based entirely on hearsay may be taken into account in judging the sufficiency of the affidavit. If mere rumor, gossip, or general conclusory opinions were sufficient, any party could reject a judge at will.
 
 
 13
 The Union's remaining contentions merit little discussion. It is first argued that the district court lacked jurisdiction for the reason that the defeated candidates failed to exhaust the remedies available under the Constitution and by-laws of the Union and of the International, or to obtain a final decision from the International within three months after invocation of internal Union remedial process, as required by 402(a) of the Act, 29 U.S.C. 482.[4] It is not disputed that the Union and the International had notice of the complaint made by the defeated candidates within 24 hours after the election and that the Union's Executive Board, which was controlled by the very incumbents whose election was challenged, waited two months before rejecting the complaint. Within five days thereafter the complaining members sought to avail themselves of the appeal procedure afforded by the International's Constitution by placing their written appeals in the United States mail on March 16 and March 17, 1970. Due to the unprecedented strike of United States postal workers, which began on March 18, 1970, the written appeals were not received by the International's headquarters until March 30, 1970.
 
 
 14
 The Union contends that the appeal was untimely because it was not filed with the International in accordance with Article XIV, 4 of the International's Constitution, which provides that such an appeal 'may be filed * * * within five (5) days following the decision of the local Union or its failure to act.' The argument, which sacrifices substance in favor of a hyper-technical construction of 402(a) and of Article XIV, 4, must be rejected. That section was predicated upon the assumption that the Union's remedial procedure would afford a fair opportunity for a reasonable investigation and redress upon the filing of a meritorious complaint. Wirtz v. Local Union No. 125, 389 U.S. 477, 484, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968). The technical construction invoked by the Union and its incumbents would have the opposite effect. It would stifle the complaint rather than provide for an honest evaluation on the merits. Such procedural perversion of the exhaustion requirements of 402(a) will not be permitted. See Hodgson v. Local Union 6799 United States Steel Workers of America, AFL-CIO et al., 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 June 14, 1971, n. 6.
 
 
 15
 With respect to the Union's last contention, there was ample evidence to support the district court's finding of reasonable probability that the Union's expenditure of over $2,000 upon publications promoting the candidacies of the incumbents may have affected the outcome of the hotly contested election in which their margin of victory was so narrow. The Union's conduct was properly found to have violated 401(g) of the Act, 29 U.S.C. 481(g), which is absolute and unequivocal in its prohibition against the use of any Union funds for such a purpose.
 
 
 16
 The order is affirmed.
 
 
 
 *
 Of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 '(g) No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.'
 
 
 [2]
 144. Bias or prejudice of judge
 'Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 'The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.'
 
 
 [3]
 Although Schmidt was in charge of certain earlier litigation instituted by JSC against the Union, the present suit, which was instituted by the Secretary, has been prosecuted and controlled by the United States Attorney for the Southern District of New York, acting at the request of the Secretary. Schmidt is not a counsel in the case, although he did file an unsolicited affidavit, when the Secretary moved for assignment of the case to a Rule 2 judge, urging the Chief Judge for the Southern District of New York to assign the case to either Judge Frankel or Judge Murphy for all purposes
 
 
 [4]
 '482. Enforcement-- Filing of complaint; presumption of validity of challenged election
 '(a) A member of a labor organization--
 (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
 (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,
 may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers) * * *.'