UNITED STATES of America

v.

Lowell M. BIRRELL, Defendant.

No. 61 Cr. 692.

United States District Court
S. D. New York.

Nov. 15, 1967.

800

**804**

---

Robert M. Morgenthau, U. S. Atty., for Southern District of New York, for United States of America; Stephen L. Hammerman, Stephen F. Williams, Asst. U. S. Attys., of counsel.

Charles N. Brower, New York City, for defendant, Lowell M. Birrell.

Anthony F. Marra, New York City, for defendant, Lowell M. Birrell.

Paul M. Wolsk, Martin Portnoy, New York City, of counsel.

Menahem Stim, New York City, for defendant, Lowell M. Birrell.

George C. Levin, New York City, for Trustee of Swan-Finch Oil Corp.

Thacher, Proffitt, Prizer, Crawley & Wood, New York City, for trustee of Equitable Plan Co.; Robert S. Stitt, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

The indictment herein was filed on July 20, 1961. On April 23, 1964, defendant Birrell surrendered; pleading was adjourned at his request. On May 8, 1964, counsel was assigned to defendant by the Court; defendant pleaded not guilty. He was remanded to jail; at his request no bail was set.

On July 1, 1964, defendant moved for sixty days additional time for the filing of pretrial motions. On July 6, 1964, Judge Bryan granted an extension of time for the making of all motions to September 21, 1964.

On September 4, 1964, defendant moved for (1) dismissal of the indictment on the ground of taint and the production of grand jury minutes in connection with this motion; (2) dismissal of certain counts of the indictment or an order compelling the Government to elect one of the counts for trial; (3) striking certain allegations of the indictment as prejudicial surplusage; (4) a bill of particulars; and (5) discovery and inspection.

As to the foregoing motions, "(1)" was denied by Judge Wyatt on June 11, 1965. United States v. Birrell, 242 F.Supp. 191, 205 (S.D.N.Y.1965); "(2)" was denied by this Court on April 3, 1967. United States v. Birrell, 266 F.Supp. 539 (S.D. N.Y.1967); "(3)" was granted by this Court on the Government's consent; "(4)" was partially granted by this Court on January 19, 1967. United States v. Birrell, 263 F.Supp. 113 (1967); and "(5)" was, on September 21, 1964, marked off the calendar on consent of all counsel subject to restoration; was subsequently revived on August 29, 1967 and is (as supplemented by a demand for sixteen additional items for discovery and inspection) now before the Court for decision.

On September 9, 1964, defendant moved to suppress files seized on July 24, 1959 and on August 22, and 24, 1959. This motion was decided by Judge Wyatt in June and July, 1965. United States v. Birrell, 242 F.Supp. 191 (1965); 243 F.Supp. 36 (1965); 243 F.Supp. 38 (1965).

On September 27, 1966, Chief Judge Sugarman assigned the case to this Court for all purposes. Defendant then moved, on October 28, 1966, (1) to disqualify this Court under 28 U.S.C. § 144; (2)

for an order directing the United States Attorney to file an inventory of the files seized on August 22 and 24, 1959; (3) for renewal and argument of the motions filed September 4, 1964 that had not yet been heard and decided. As to these motions, "(1)" was denied by this Court on January 9, 1967. United States v. Birrell, 262 F.Supp. 97 (S.D.N.Y.1967); "(2)" was denied by this Court on May 23, 1967. United States v. Birrell, 269 F. Supp. 716 (S.D.N.Y.1967); and "(3)", involving certain motions made originally on September 4, 1964, was dealt with as already set forth above in detailing the disposition of the September 4, 1964 motions. Of those motions only the motion for discovery and inspection (as supplemented) remains undecided.

On February 27, 1967, defendant moved for a pretrial evidential hearing to probe the genesis and evolution of the Government's prospective trial proof in order to have the Government demonstrate that its proposed trial evidence is uncontaminated by the suppressed records and clues or leads derived therefrom. The motion was denied by this Court on May 23, 1967. United States v. Birrell, 269 F.Supp. 716 (S.D.N.Y.1967).

On May 26, 1967, William J. Brennan, III, Esq., then defendant's assigned counsel, requested to be relieved of his assignment. Over the Government's opposition (Minutes of Pretrial Hearing, pp. 190, 194) the Court, on June 16, 1967, relieved Mr. Brennan and designated Charles N. Brower, Esq. as assigned counsel. Mr. Brennan agreed to make himself available to Mr. Brower for conference and consultation "so that Mr. Brower will be brought up to date not only on the proceedings themselves as they maybe reflected in the court rec-

ords, but, more importantly, brought up to date in terms of Mr. Brennan's theories of the defense, considerations of tactics and strategy, which are important in any litigation, and any other matters that would assure to Mr. Birrell that he should have the most effective representation both on the facts and on the law." (Minutes of Pretrial Hearings, p. 222).

In addition, for the purpose of assuring the most effective representation of defendant and to aid Mr. Brower in discharging his duties, the Court appointed Anthony F. Marra, Chief of the criminal defense staff of The Legal Aid Society, to serve as counsel with Mr. Brower in behalf of defendant.

On June 16, 1967, the Court granted defense counsel until August 29, 1967 to make whatever motions they thought appropriate or necessary and set the case down for trial on December 4, 1967. (Minutes of Pretrial Hearings, pp. 228, 234, 242, 261).

In a series of motions made returnable on August 29 and September 5, 1967, defendant applies for the following relief: [1]

(1) the disqualification of the Court from proceeding further in indictments 61 Cr. 200, 61 Cr. 820, 61 Cr. 903 and 62 Cr. 307 because of personal bias or prejudice (28 U.S.C. § 144);

(2) a preliminary injunction restraining the United States Attorney, C. E. H. McDonnell, Trustee in Chapter X Reorganization of Equitable Plan Company and George C. Levin, Esq., Trustee in Chapter X Reorganization of Swan-Finch Oil Corporation, and all other persons "from entering, removing documents from, making photocopies of or in any other manner whatsoever using any of

---

[1]. Pursuant to Rule 2 of the General Rules of United States District Courts for the Southern and Eastern Districts of New York, the Court was appointed on September 27, 1966, as all-purpose judge for 61 Cr. 692 (the American Leduc indictment). Motions number "(2)", "(4)", "(5)", "(6)", "(7)" and "(8)" are directed solely to that indictment. Motion number "(3)" deals with all fed-

eral indictments now pending against defendant (i.e., 61 Cr. 200, 61 Cr. 820, 61 Cr. 903 and 62 Cr. 307 as well as the American Leduc indictment) and New York County Supreme Court Indictment 2490–1959. All federal indictments except the American Leduc indictment are the subject matter of motion number "(1)".

the files and other property seized from defendant Lowell M. Birrell on August 22 and 24, 1959, and presently lodged in Room 501 of * * * [the] United States Courthouse * * *";

(3) a pretrial hearing for the return of property unlawfully seized from defendant and suppressed for use as evidence against the defendant by orders of Judge Wyatt, June 11 and 25, 1965; and at such hearing to require the return of all such property "together with all copies, transcriptions, abstracts, excerpts, notes and other memorializations of such property * * *" and an itemized list of all property returned;

(4) an order pursuant to Fed.R.Crim. P. 12(b) and 48(b) dismissing the indictment in 61 Cr. 692 on the grounds that:

"(a) some of the defendant's property which was suppressed by the orders of the Honorable Inzer B. Wyatt, United States District Judge, dated June 11 and 25, 1965 has been lost, destroyed, mutilated, removed or otherwise made unavailable to defendant, and the remaining such property is in such a state of disorder, disarray and confusion that as a matter of law it is impossible for defendant to prepare for trial;

(b) as a matter of law the Government cannot establish that the evidence which it intends to introduce at the trial of this indictment is not tainted by any of the aforesaid suppressed property; and

(c) defendant has been deprived of his right to a speedy trial";

(5) an order pursuant to Fed.R.Crim. P. 6(b) and 12(b) dismissing the indictment in 61 Cr. 692 on the grounds that the grand jury was improperly selected, as Negroes, Puerto Ricans and others of lower socio-economic status were systematically and intentionally excluded from the array;

(6) an order pursuant to Fed.R.Crim. P. 15 permitting defendant to depose

American Leduc Petroleums Limited and the Toronto Stock Exchange in connection with 61 Cr. 692;

(7) an order pursuant to Fed.R.Crim. P. 15 and 17:

(a) precluding the use of evidence in 61 Cr. 692 (American Leduc) that defendant was a fugitive from justice. Should such evidence be used, defendant seeks to introduce as evidence certain depositions on file with the Court and to depose certain additional named persons.

(b) barring evidence which tends to show that acts alleged in indictment 61 Cr. 692 were part of a common plan or scheme; and

(c) requiring the Government to elect those counts of indictment 61 Cr. 692 which will actually be tried against defendant;

(8) orders pursuant to Fed.R.Crim.P. 16 and 17(c) permitting defendant's discovery and inspection of thirty-two enumerated items in connection with 61 Cr. 692.

The many and diverse issues raised by these motions necessitate a recital of the relevant factual background as disclosed by the motion papers.[2]

On April 15, 1957, a civil action was instituted in this Court by the Securities and Exchange Commission against Birrell and twenty-three other defendants. Birrell was subpoenaed to testify on October 7, 1957, but did not appear. Instead, defendant left the United States sometime during October 1957 and did not return until April 23, 1964.

Sometime during 1957, approximately forty-six filing cabinets containing from one million to two million documents were moved at defendant's request from New York City to Teaneck, New Jersey. Allegedly the files contained personal papers of Birrell, business records of the law firm of Birrell and Larson, and records of various corporations including Swan-Finch Oil Corporation and Equita-

---

2. Further factual background may be found in the opinions in United States v. Birrell, 242 F.Supp. 191, 194–197 (S.D. N.Y.1965) and United States v. Birrell, 269 F.Supp. 716, 718–719 (S.D.N.Y. 1967); and in the Appendix to this opinion.

ble Plan Company. These documents were moved again early in 1959 to Bucks County, Pennsylvania, where they were placed in the custody of Jonathan D. Dunn, an attorney for the defendant.

In January 1958, the trustees in bankruptcy of Swan-Finch Oil Corporation and attorneys for the trustee in bankruptcy of Equitable Plan Company began searching for the records of their corporations. Finally, on August 20, 1959, the location of the records was revealed at an ancillary proceeding in bankruptcy pending in this Court. A search warrant was issued on August 22, 1959, based on an affidavit of an attorney in the ancillary proceeding. The affidavit of a postal inspector supported a second search warrant issued on August 24, 1959. Both warrants were executed and returned on the respective issue dates.

The seized records were first placed in the custody of the United States Marshal for the Eastern District of Pennsylvania. Sometime after November 10, 1959, they were deposited in the custody of the Clerk of the Court for the Southern District of New York. During this period of approximately three months, the records were neither inspected nor disturbed.

The removal of the records from the Eastern District of Pennsylvania was pursuant to two Court orders. The first, dated October 16, 1959, and filed on October 26, 1959, was issued by Judge Palmieri of the Southern District of New York. Judge John W. Lord of the Eastern District of Pennsylvania issued the second order, dated November 10, 1959. These orders directed the Marshal of the Eastern District of Pennsylvania to deliver the records to the custody of the Clerk of the United States Court for the Southern District of New York, subject to the further order of this Court.

From November 1959 until July 1961, the files remained in the custody of the Clerk of this Court. The records were inspected and photocopied, pursuant to court order, by various attorneys in the above-mentioned bankruptcy proceedings, representatives of the Attorney-General of the State of California, and the District Attorney of the City of Los Angeles. However, no inspection or photocopying of the records by any representative of the United States Attorney for the Southern District of New York occurred during this period.

In July 1961, the records were transferred from a file room in the Clerk's office to the file room of the United States Attorney (Room 501). Judge Palmieri approved the transfer in order to insure the completeness and maintain the integrity of the files. Custody of the records, however, remained with the Clerk of the Court. Representatives of the United States Attorney's Office and investigators from the Securities and Exchange Commission then began inspection and inventory of the documents.

In 1961 and 1962, six federal indictments were returned against defendant.[3] These charges include, *inter alia,* violations of the Securities Act of 1933 (15 U.S.C. § 77a et seq.), the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.), the mail fraud statute (18 U.S.C. § 1341), and the transportation of stolen property in interstate commerce (18 U.S. C. § 2314). Bench warrants for the arrest of defendant, issued as to each indictment, were executed upon Birrell's return to the United States on April 23, 1964.

Birrell was arraigned on April 23, 1964. As the fixing of bail was adjourned at defendant's request, he was placed in custody. On February 11, 1965, bail was set at $150,000 by Judge Weinfeld of this Court. On June 28, 1965, bail was reduced to $50,000. It was reduced to $15,000 on July 27, 1965; and defendant, after posting this amount, was released on August 4, 1965.

Late in 1964, defendant moved for suppression and return of the records seized on August 22 and 24, 1959. On June 11,

---

3. Five of these indictments are still pending; a *nolle prosequi* of one indictment

(159–275) was entered on March 24, 1965, by Judge Cooper of this Court.

1965, Judge Wyatt ordered the seized records suppressed for use as evidence against defendant, ruling that the affidavits underlying the search warrants were insufficient to establish probable cause. United States v. Birrell, 242 F. Supp. 191, 201 (S.D.N.Y.1965). By subsequent order, Judge Wyatt ordered restored to defendant those records of which Birrell could establish ownership. The Court expressed the opinion that the burden of proof was properly placed on defendant because: "(a) movant knows more about the property than anyone else and (b) he delayed more than five years in making the present motion." United States v. Birrell, 243 F. Supp. 38, 41 (S.D.N.Y.1965).

Pursuant to Judge Wyatt's order, defendant moved, on October 25, 1965, for the return of the suppressed property. This motion was adjourned for two weeks in order that defendant, chapter X trustees in bankruptcy of Swan-Finch and Equitable Plan, and the Government might confer and agree on the return of the files. Eventually, the motion was referred to Chief Judge Ryan of this Court, who denied it on December 15, 1965, because defendant had disregarded the procedure outlined in Judge Wyatt's order.

The Government moved, on December 2, 1965, for the appointment of a single Judge to handle 61 Cr. 692, the American Leduc indictment, pursuant to Rule 2 of General Rules of United States District Courts for the Southern and Eastern Districts of New York. Chief Judge Ryan announced that all but emergency matters should be deferred pending the appointment of a Rule 2 Judge. On September 27, 1966, Judge William B. Herlands was named Rule 2 Judge for the American Leduc indictment.

## 1. MOTION TO RECUSE

Defendant moves, pursuant to 28 U.S. C. § 144,[4] to disqualify District Judge William B. Herlands from criminal cases 61 Cr. 200, 61 Cr. 820, 61 Cr. 903 and 62 Cr. 307 (and possibly New York County Supreme Court indictment 2490–59) on the ground that Judge Herlands (hereinafter "the Court") has a personal bias or prejudice against defendant. Motions of defendant in these actions seeking the return of property suppressed as evidence, pursuant to the July 1, 1965 order of Judge Wyatt, were referred to the Court on August 28, 1967.

According to defendant, the first sentence in a prior opinion in an unrelated civil suit shows bias or prejudice on the part of the Court. In Re Equitable Plan Co., 185 F.Supp. 57 (S.D.N.Y.) modified, Ings v. Ferguson, 282 F.2d 149 (2d Cir. 1960), disposing of a motion to quash *subpoenas duces tecum,* begins as follows:

"This action is another chapter in the attempt to unravel the affairs and make whole the victims of Lowell Birrell, presently a fugitive from justice under indictment for crimes arising out of his financial activities." (185 F.Supp. at 58)

This same contention was the basis of a prior motion by defendant to disqualify the Court from presiding over 61 Cr. 692, the American Leduc indictment. United States v. Birrell, 262 F.Supp. 97 (S.D. N.Y.1967). The Court denied this request on the grounds (1) that defend-

4. Section 144 provides:
"*Bias or prejudice of judge*
"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

ant had overlooked the statutory requirement of stating "the facts and the reasons" for his belief that bias or prejudice existed, presenting, instead, mere conclusions; and (2) that the Court had simply expressed "relevant judicial opinion" and showed no extra-judicial or personal bias or prejudice. The single quoted sentence, the Court pointed out, occurred "in a totally extraneous case in which the Court summarized the relevant context of the dispute before it, in reliance upon the then uncontroverted record." United States v. Birrell, 262 F. Supp. 97, 100 (S.D.N.Y.1967).

■ The rationale of the Court's prior opinion applies to the *instant motion.* The present moving affidavit is as inadequate as defendant's former affidavit.[5]

■■ The Court is aware of its duty not to recuse itself when there is no sound reason to do so. In the absence of persuasive circumstances calling for recusation, this obligation is even greater when inordinate delay in the administration of criminal justice would result from such a disqualification.[6] Such a result would occur here because precisely the same relief demanded by these motions —the return of the suppressed property —is requested in an identical motion in the American Leduc case, which the Court is required to decide.

■ Defendant also cites as evidence of bias certain remarks made by then Assistant United States Attorney Gerald Walpin in the sentencing proceedings of defendants in United States v. Garfield et al., 61 Cr. 360 before the Court in 1962 and 1963 (Defendant's Af-

fidavit of Prejudice, pp. 3-6). There is no claim that any opinions or statements about defendant were made by the Court; nor is there any claim that the Court acquiesced in or agreed with any statments or opinions made by the Government in these proceedings. Rather, it appears that defendant contends that the Court's hearing of these remarks is sufficient to show personal bias or prejudice. Mere exposure to unfavorable remarks or statements made in the course of adversary proceedings is not enough to show bias or prejudice on the part of the Court against defendant. Were that so, few judges could escape disqualification. Cf. United States v. Weldon, 384 F.2d 772, (2d Cir., Oct. 30, 1967).

Defendant finally contends that certain conduct of the Court after it was assigned as the all purpose judge herein indicates personal bias or prejudice (Defendant's Affidavit, pp. 7-9). Defendant points to the Court's action at the pretrial conference of October 14, 1966, scheduling hearings on numerous pretrial motions despite notification that defendant was filing an affidavit of prejudice.

■■ The efforts of the Court to expedite the trial herein does not evidence bias or prejudice. It is the trial judge's duty to prevent a defendant from utilizing an affidavit of prejudice for the sole purpose of delaying and otherwise unjustifiably embarrassing the administration of justice. United States v. Murphy, 19 F.Supp. 987, 988 (W.D.Mo.1937). See also Rosen v. Sugarman, 357 F.2d 794, 797-798 (2d Cir. 1966) (Friendly, J.).

5. See, e.g., United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); Berger v. United States, 255 U.S. 22, 33-34, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Rosen v. Sugarman, 357 F.2d 794, 797-798 (2d Cir. 1966); Foster v. Medina, 170 F.2d 632, 633 (2d Cir. 1948), cert. denied, 335 U. S. 909, 69 S.Ct. 412, 93 L.Ed. 442 (1949); Craven v. United States, 22 F. 2d 605, 607-608 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72

L.Ed. 739 (1928); Williams v. Pierce County Board of Commissioners, 267 F. 2d 866, 867 (9th Cir. 1959); Freed v. Inland Empire Ins. Co., 174 F.Supp. 458, 464 (D. Utah 1959); United States v. Lattimore, 125 F.Supp. 295, 296 (D.D. C.1954); United States v. Valenti, 120 F.Supp. 80, 85-86 (D.N.J.1954).

6. See, e.g., Rosen v. Sugarman, 357 F.2d 794, 797-798 (2d Cir. 1966) (Friendly, J.).

■■ Defendant also points to certain statements of the Court as indications that these motions would be decided unfavorably to him. Whether examined singly or together, these statements are legally insufficient to show personal bias or prejudice. Defendant repeatedly submits quotations out of context and ignores the requirement that "[t]he fair meaning of any remark must be interpreted in the light of the context in which it is uttered". Foster v. Medina, 170 F.2d 632, 633 (2d Cir. 1948) cert. denied, 335 U.S. 909, 69 S.Ct. 412 (1949).

■■ Moreover, disqualification based on alleged bias and prejudice cannot be predicated on tentative opinions of the Court based on the papers and testimony before it.[7]

For the reasons heretofore stated, defendant's motion is hereby denied. So ordered.

## 2. MOTION FOR PRELIMINARY INJUNCTION

Defendant seeks to enjoin the United States Attorney, the Chapter X Trustees of Swan-Finch Oil Corporation and Equitable Plan Company and all other persons from entering or making any use whatsoever of the files seized on August 22 and 24, 1959, pending the determination of a motion for the return of said property. (Motion number 3, infra.)

The Government is precluded by Judge Wyatt's suppression order of June 11, 1965 from offering any of these files into evidence. On the other hand, the trustees are not subject to any such restraint. Indeed, they are using the documents in various civil proceedings, including one now pending in this Court in which Lowell Birrell is named as a party defendant. McDonnell v. American Leduc et al., Civ.No. 137–160. This latter litigation is now actively in the pretrial stage; and attorneys of the Equitable Plan trustee are marking as exhibits photocopies of documents in the suppressed files and using them in the deposing of prospective witnesses.

Defendant asserts that the injunctive relief sought is necessary in order to prepare properly for trial, to preclude the prosecution from a cumulative means of discovery beyond that provided for in the Federal Rules of Criminal Procedure, to safeguard his Fifth Amendment privilege against self-incrimination, and to preserve the Court's ability to grant the ultimate relief demanded—return of the suppressed property.

■■ The present motion involves the reconciliation of important competing interests and policies: the right of a defendant in a criminal case to a fair and impartial trial vis-à-vis the right of the Chapter X trustee, representing many large and small creditors, to vindicate pecuniary and economic rights in an expeditious manner. The Court is sensitively aware that its duty to insure the fairness of the criminal proceedings before it demands adherence to standards higher than those required by due process, McNabb v. United States,[8] 318 U.S. 332, 340, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and even the "probability of unfairness" is to be prevented, In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99

---

**7.** United States v. Grinnell Corp., 384 U. S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); Berger v. United States, 255 U.S. 22, 33–34, 41 S.Ct. 230, 65 L.Ed. 481 (1921). The Court feels it unnecessary to reiterate all the oft-repeated controlling principles of law in this field. See cases cited in Footnote 5.

**8.** "Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence. Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' and below which we reach what is really trial by force." (318 U.S. at 340, 63 S.Ct. at 613) See also, Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Nardone v. United States, 308 U.S. 338, 339, 342, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

L.Ed. 942 (1954). The ultimate issue before the Court is whether a practical accommodation of the rival interests and policies can be achieved; or whether vindication of the rights of the defendant justifies and compels resort to the drastic remedy of an inter-court injunction.

The power of a criminal court to enjoin concurrent civil proceedings involving the same subject matter was recognized in United States v. Simon, 262 F. Supp. 64 (S.D.N.Y.1966), rev'd, 373 F.2d 649 (2d Cir. 1967), cert. dismissed, sub nom. Simon v. Wharton, 386 U.S. 1030, 87 S.Ct. 1485, 18 L.Ed.2d 591 (1967). A civil action for damages had been brought in the Eastern District of New York by a reorganization trustee against an accounting firm alleging a conspiracy to despoil assets. Subsequently, an indictment based on the same transaction was returned in the Southern District of New York against certain named members of the firm charging them with violations of the Securities Exchange Act of 1934. The defendants in the criminal proceeding moved to enjoin the trustee from taking their depositions in the civil action until the completion of the criminal trial. The District Court, in enjoining the taking of depositions for a ninety-day period, cited two authorities: the "All Writs" Act [9] and the federal criminal court's inherent equity jurisdiction or supervisory power over the administration of criminal justice. Since the scope of pretrial discovery is much broader in civil than in criminal proceedings, the Court found that the deposing of the defendants would enable the Government to obtain "a full disclosure of the . . . [defendants'] case while relying on the rules to prevent disclosure of its own

\* \* \*" (262 F.Supp. at 73–74). Therefore, the probability of unfairness in the criminal trial justified the resort to injunctive relief.

In reversing the order of the District Court, the Court of Appeals for the Second Circuit assumed, without deciding, that a federal criminal court has power to issue an inter-court injunction. The Court, however, found this case inappropriate for such relief because it was not shown that civil discovery would interfere with the criminal trial or the preparation of the defense. The defendants' rights were protected by the availability of the privilege against self-incrimination in the civil proceedings.

▮ We recognize that, in appropriate circumstances, a federal criminal court has the power to enjoin concurrent civil proceedings [10] in order to prevent unfairness in the criminal trial. The inherent power of a federal court to supervise the administration of criminal justice [11] and the explicit mandate of the Federal Rules of Criminal Procedure provide sufficient bases for such relief.[12] Under Fed.R.Crim.P. 57(b), where "no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute".

▮ Moreover, to prevent unfairness in criminal proceedings, a federal court clearly has the power to affect persons not party to the criminal action. Rea v. United States, 350 U.S. 214, 217, 76 S.Ct. 292, 100 L.Ed. 233 (1956); Go-Bart Importing Co. v. United States, 28 U.S. 344, 355, 51 S.Ct. 153, 75 L.Ed. 374 (1931); In re No. 32 East Sixty-Seventh Street, 96 F.2d 2, 153, 157 (2d Cir.

---

9. 28 U.S.C. § 1651(a) (1964):
 "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

10. Such injunctions are always directed to the parties in the civil suit and never to the court.

11. See citations in Footnote 8.

12. The Court is not convinced that the "All Writs" Act provides a tenable basis for the issuance of inter-court injunctions. The cases cited by the District Court in United States v. Simon, supra, are not directly in point; rather, they involved the enjoining of collateral proceedings which threatened to undermine the previously acquired jurisdiction of the enjoining court.

1938). See also, Ex parte Lennon, 166 U.S. 548, 17 S.Ct. 658, 41 L.Ed. 1110 (1897); City of Fresno v. Edmonston, 131 F.Supp. 421, 427 (S.D.Cal.1955).

 The extreme remedy of an inter-court injunction should be employed only "in exceptional circumstances". Interference with proceedings in another court should be avoided where other adequate remedies are available. United States v. Simon, 373 F.2d 649, 653 (2d Cir.), cert. dismissed, sub nom. Simon v. Wharton, 386 U.S. 1030, 87 S.Ct. 1485 (1967); D'Ippolito v. American Oil Co., 272 F.Supp. 310 (S.D.N.Y. Aug. 18, 1967). Furthermore, in the absence of prejudice to the criminal defendant, the Court must insure the right of the trustee to litigate his civil action in an unhindered and expeditious manner.

 Defendant relies on United States v. Simon, supra and United States v. American Radiator & Standard Sanitary Corp., 272 F.Supp. 691 (W.D.Pa. August 8, 1967) as authority for the issuance of injunctive relief in the instant case. We do not agree. The present case is factually distinguishable because of an illegal search and seizure. Since the seized files—the subject matter of the present motion—are suppressed for use as evidence against the defendant, all clues and leads derived therefrom are likewise inadmissible as fruit of the poisonous tree. Therefore, any evidence adduced by the trustee through the use of the suppressed files in the civil suit is inadmissible in the criminal trial.[13]

 The inability of the Government to utilize evidence so obtained by the trustee invalidates defendant's claim that his privilege against self-incrimination is or may be violated.[14] The charge that the United States Attorney is obtaining a cumulative means of discovery is likewise rejected. While in *Simon* and *American Radiator*,[15] the prosecution might use civil discovery to obtain disclosure of the defendant's case, no such unfairness occurs in the instant case.

Defendant's bare assertion that "Insofar as the trustees * * * proceed to ferret out documents from defendant Birrel's files and to conduct investigations and formal or informal examinations of witnesses * * * evidence is being amassed which is and has been available to the government prosecutor", (Memorandum of Law in Support of Defendant's Application for Order to Show Cause With Stay, p. 4), is unsupported by the record before this Court. There is no factual showing of evidence received by the Government from the trustees. Indeed, the United States Attorney has repeatedly avowed his intention to rely on independently obtained, untainted evidence. In the absence of any proof to the contrary, we must accept this oft-repeated representation as true, at least at this juncture.

---

13. A recent commentator, in approving the opinion of the District Court in United States v. Simon, has noted that its rationale does not extend to cases involving illegally seized evidence.

"In most respects, the precious uniqueness of a criminal proceeding is not endangered just because a civil proceeding related to the same transactions takes place at about the same time. For example, even if illegally seized evidence may be introduced in the civil trial, the criminal trial need not be tainted by it."

Note, Concurrent Civil And Criminal Proceedings, 67 Colum.L.Rev. 1277 (1967).

14. Defendant's privilege against self-incrimination would extend only to his personal papers, and perhaps to partnership records of Birrell and Larson. It would not be applicable to the mass of corporate records in the impounded files.

15. The value of *American Radiator* as a precedent is questionable. The civil suit involved there was a private treble damage antitrust action. It is possible to characterize such a suit analytically as a means of antitrust enforcement. The antitrust laws themselves provide that a conviction in a criminal action initiated by the Government is *prima facie* evidence in a private treble damage suit. (15 U.S.C. § 15). See D'Ippolito v. American Oil Co., 272 F.Supp. 310 (S. D.N.Y. August 18, 1967).

Defendant complains proper trial preparation will be impossible unless all other parties are temporarily enjoined from removing, photocopying and using the impounded documents. He asserts that during the eight-year sojourn of these files in the United States Courthouse many documents have been lost, mutilated and misplaced. He seeks a protective order to preserve the integrity of the files and to allow him an opportunity to use them. Moreover, he argues that the continuation of the *status quo* will prevent the Court's granting the ultimate relief requested—the return to defendant of "all original documents and copies thereof". (Defendant's Memorandum, pp. 7–8.)

Whether documents in the impounded files have been lost or damaged is a question we need not decide here. The moving papers are replete with conflicting statements and contentions on this issue. In any event, prohibiting the trustees, the only persons presently examining the files, from temporarily removing, photocopying and using the documents now cannot undo any alleged past damage.

■ The Court is unpersuaded that proprietary or constitutional rights of defendant are being undermined by the trustees' continued access to and use of the files pending decision on the motion for return of property (Number 3, infra.) It is undisputed that defendant has had and continues to have untrammeled access to the impounded files to prepare his defense. He has refrained from using them in the exercise of his own free choice.[16]

The trustees, on the other hand, would be seriously prejudiced if injunctive relief were granted. In contrast to the situation in United States v. Simon, supra, the trustees' civil litigation is in the advance pretrial stages. Photocopies of many documents from the impounded files have already been marked as ex-hibits in that action. Enjoining use of the documents would delay the civil litigation. This court will not impair the jurisdiction of another coordinate court except "in exceptional circumstances", not apparent here. In the absence of actual or probable prejudice to defendant, neither logic nor precedent supports emasculation of the rights of civil litigants and the undermining of jurisdiction of a sister federal district court.

One must note that in United States v. Simon, supra, the case upon which defendant relies so heavily, the defendants sought sole custody of their own files in order to properly prepare for trial. In rejecting the defendants' demand, the District Court found "no likelihood that the defendants' preparation for trial will be unduly hampered by the * * * continuation of the present arrangement with respect to the Lybrand documents". (262 F.Supp. at 78.) While in *Simon*, the documents were the property of the defendants, in the instant case, the respective proprietary rights of the defendant and those of Chapter X trustees in the impounded files have not yet been adjudicated.

■ Finally, the Court is not persuaded that Judge Wyatt's suppression order expunged the jurisdictional basis for the several access orders to the impounded files granted since October 16, 1959 by Judge Palmieri. On the contrary, Judge Wyatt's order of July 1, 1965, specifically provides that: "a. the property will remain in the custody of the Clerk of this Court, subject to further order of this Court, as provided in the order of this Court made by Judge Palmieri under date of October 16, 1959 * * * * ". United States v. Birrell, 243 F.Supp. 38, 41 (S.D.N.Y.1965). This order, representing the law of the case, is binding on us.

Defendant's motion for injunctive relief is hereby denied. So ordered.

16. Defendant's contention—that to use the impounded files under these circumstances would be a waiver of his Sixth Amendment right to counsel—is discussed in Footnote 17, infra.

### 3. MOTION FOR RETURN OF DOCUMENTS

Defendant demands a pretrial evidential hearing to adjudicate ownership of the documents in the impounded files and to return to him those papers to which he can demonstrate that he has a possessory interest. The forty-six cabinets and other files are now in the custody of the Clerk of the Court and, for purposes of storage, are located in Room 501 of the Courthouse, a room also used by the United States Attorney for keeping files.

Defendant asserts that, if the documents continue to be retained in their present quarters, he will be unable adequately to prepare for trial and that various of his constitutional rights will be prejudiced, including, *inter alia*, the privilege against self-incrimination (Fifth Amendment), the right to due process of law (Fifth Amendment) and the right to the assistance of counsel (Sixth Amendment).

The Government does not object to the return of any of the impounded documents, except for those previously marked as court exhibits in other proceedings. The Government firmly reiterates that it will not use upon the trial any of the suppressed documents nor any clues, leads or information derived from such documents. It does, however, insist that, as a prerequisite to the return of any papers, defendant must satisfy his burden of proof of ownership of specific papers whose return is sought, as explicitly prescribed by Judge Wyatt's order of July 1, 1965. Of salient importance is the Government's contention that the Court should not, at this time, hold evidential hearings on the issues posed by defendant's motion because such hearings would consume many months and would delay the trial scheduled to start on December 4, 1967 and estimated to require only ten days for the prosecution's case.

The Chapter X trustees are deeply concerned with preserving their access to the records. Their argument, supported by uncontrovertible facts, is that the records are vital to actively pending civil litigation and that, therefore, the files should remain in the court's custody.

The Court must accommodate these competing interests in a manner that will safeguard the defendant's right to a fair trial and his other constitutional rights and, at the same time, protect the legitimate interests of the Chapter X trustees. This dual objective can best be achieved by deferring until after the trial a full-scale evidential hearing to resolve the question of defendant's ownership of the documents and their return to him.

The Court hereby orders the files to remain in the custody of the Clerk of the Court but orders the files to be transferred from Room 501 to Rooms 607K and 607L of the Courthouse.

Defendant is hereby granted free and untrammeled access to the files in said rooms both day and night. He will be enabled to arrange and collate documents in whatever manner he sees fit as well as to photocopy any records he desires to remove or to introduce as evidence at the trial or to use in any manner or for any purpose at the trial.

No one will be permitted to examine or make a record of any papers so handled by defendant. No representative of the Government will be allowed to enter said rooms or to utilize the files therein pending the completion of the trial.

The right of defendant and his attorneys to confer privately with witnesses in said rooms in conjunction with the records will be completely safeguarded at all times.

Upon request of defendant's attorneys, the Court will arrange to furnish them with separate locked filing cabinets (to which they will have exclusive access) in which they may store collated records for use in preparing for trial and during the trial.

The Chapter X trustees are the only persons aside from defendant who will be allowed access to the files. Such access will, however, be subject to the close supervision of the Court and will be permitted in such manner and at such times

as will not in the slightest degree impinge upon, hinder or obstruct defendant's efforts to prepare for trial.

A direct representative of the Court will be available at all times whenever access is sought to said rooms to ensure prompt and effective execution of the Court's directives as set forth herein and to guarantee full protection of defendant's rights.

The Court's representative will perform the additional fr¬ction of making sure that none of the documents is destroyed or removed from the said rooms, subject to defendant's privilege of having photocopies made.

This procedure will furnish additional assurance that the records will remain intact until they are distributed eventually to their rightful owners. Furthermore, it will insulate defendant against possible allegations that he has added, destroyed or removed papers from the impounded files. This aspect of the integrity of the files is particularly significant because, in the event of a conviction, the Court will conduct a post-trial hearing at which the Government must demonstrate the untainted character of its trial proof.[17]

Defendant, however, asserts that Rule 41(e) of the Federal Rules of Criminal Procedure [18] requires that a motion for the return of property be determined and all unlawfully seized evidence be returned prior to trial. The Court is not persuaded that such an approach is compulsory.

■■■ The policy that there be minimal delay and interference with the trial of a criminal indictment supports the general rule that a hearing under Rule 41(e) should be held in advance of trial.[19] The present case, however, presents the unusual feature that persons other than and in addition to defendant claim ownership of many of the suppressed items. As already indicated, the large number of' papers involved—variously estimated at from one to two million—and the warmly contested nature of this adversary hearing, plainly demonstrate that the proceeding to unravel the tangled skein of proof and to adjudicate the ownership of each and every document will unavoidably consume many months.

Far from furthering the purpose underlying Rule 41(e), a pretrial hearing, in the particular circumstances of this case, would serve only to vitiate this policy by inordinately postponing the

---

17. The Court's disposition of the present motion renders it unnecessary to adjudicate definitively defendant's constitutional claims. Neither the present nor the newly ordered arrangement with respect to the files violates defendant's Sixth Amendment right to the assistance of counsel. Coplon v. United States, 89 U.S.App.D.C. 103, 191 F.2d 749 (1951) and Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953), both chiefly relied on by defendant, involved purposeful covert invasions by governmental agents on the confidential relationship between the defendant and his counsel. See Hoffa v. United States, 385 U.S. 293, 306, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Such a surreptitious intrusion is not present here. Defendant has had and will continue to have ample opportunity to prepare for trial and to conduct his defense during the trial without fear of revelation of defense strategy and tactics to the prosecution or anyone else.

Defendant's claim that his privilege against self-incrimination is being violated has been discussed at page 812, supra.

18. Rule 41(e) provides, in part:
"If the motion is granted the property shall be restored unless otherwise subject to lawful detention * * *. The motion [to suppress evidence] shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

19. See Nardone v. United States, 308 U.S. 338, 342, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Agnello v. United States, 269 U.S. 20, 34, 46 S.Ct. 4, 70 L.Ed. 145 (1925); United States v. Nicholas, 319 F.2d 697, 698 (2d Cir.) cert. denied, 375 U.S. 933, 84 S.Ct. 337, 11 L.Ed.2d 265 (1963).

trial, in a long-pending proceeding already deaccelerated by delays to a standstill.

■ The rule and its equitable antecedents invest the Court's power with flexibility as to the timing of hearings.[20] Pertinent to this element of the scheduling of hearings is the proposition that, even though property is suppressed for use as evidence, a defendant in a criminal case is not automatically entitled to its return. Where suppressed evidence is "otherwise subject to lawful detention" because of the rights of others, defendant cannot compel its return before trial.[21]

■ That defendant is indigent and represented by court-assigned counsel is, of course, a fact that must be considered in determining the timing of any hearing. The Court is sensitively aware of the following admonition by the Supreme Court:

"It is a serious imposition upon appointed counsel to require dissipation of energy and time in preliminary skirmishing. Moreover, the delay occasioned by this extended interim proceeding is itself offensive to the ideal of speedy administration of criminal justice." Coppedge v. United States, 369 U.S. 438, 457, 82 S.Ct. 917, 927, 8 L.Ed.2d 21 (1962) (Stewart, J., concurring).

■ To require the Court and defendant's assigned counsel at this time to engage in months of pretrial hearings to

determine the ownership of the suppressed documents—an issue entirely unrelated to the substantive merits of the indictment—is neither good law nor good sense. Unnecessary further delay in commencing the trial of this indictment, returned over six years ago, is "offensive to the ideal of speedy administration of criminal justice".

■ Defendant also requests more specifically the immediate return of approximmately fifty percent of the impounded records. During oral argument, the attorney for the trustee of Equitable Plan Company frankly stated that he had no interest in approximately one-half of the documents, representing the so-called Bohack and Dupont files. These are the files encompassed within defendant's specific request.

The records in question are not physically separated from the general mass of documents. They are distributed throughout the file cabinets. As with the other impounded files, protracted hearings would have to be held in order to determine which particular papers the trustees do not claim. The Court declines to engage in lengthy pretrial hearings on collateral matters and thereby to delay the commencement of the trial. The procedure for the immediate return of these documents is prescribed by Judge Wyatt's order: " * * * application to the Court based on the written agreement thereto of the United States Attorney, of the Trustee of Swan-Finch Oil Corporation, and of the Trustee of Equitable

20. See, e.g., United States v. Stonehill, 254 F.Supp. 1003, 1005 (S.D.N.Y.1966); Plato v. Katzenbach, 253 F.Supp. 1021, 1022 (N.D.N.Y.1966); Record, pp. 1466–71, 2051–52, United States v. Agueci, 61 Cr. 527 (S.D.N.Y.1961), aff'd, 310 F.2d 817, 834, 99 A.L.R.2d 478 (2 Cir. 1962), cert. denied, sub nom. Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); United States v. Lester, 21 F.R.D. 30 (S.D.N.Y.1957); United States v. Leiser, 16 F.R.D. 199 (D.Mass.1954).

21. See, e.g., United States v. Pardo-Bolland, 229 F.Supp. 473, 478 (S.D.N.Y. 1964), aff'd 348 F.2d 316 (2d Cir.), cert. denied, 382 U.S. 944, 86 S.Ct. 388,

15 L.Ed.2d 353 (1965); Conti v. Morgenthau, 232 F.Supp. 1004 (S.D.N.Y. 1964). Cf. Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (" * * * the suppression of evidence does not in itself necessarily entitle the aggrieved person to its return (as for example, contraband) * * * ".)

While most cases refusing to return suppressed evidence to defendant before trial involved contraband, there is no discernible reason why the return should not also be deferred when there are adverse claimants to the property or records and unnecessary delay of the criminal trial can be avoided.

Plan Company * * * " United States v. Birrell, 243 F.Supp. 38, 41 (S.D.N.Y. 1965).

Defendant demands "all copies, transcriptions, abstracts, excerpts, notes and other memorializations" of the impounded documents. In view of the Court's postponement of the hearing for the return of the records until after the trial, it is unnecessary to pass upon this demand at this time. Defendant will be entitled to the return of the copies and originals of all documents to which he proves ownership at that post-trial hearing. See, e.g., Goodman v. United States, 369 F.2d 166, 168 (9th Cir. 1966); United States v. Kraus, 270 F. 578, 581 (S.D.N.Y.1921) (L. Hand, J.)

Opposing defendant's motion for the return of copies, the Government argues that, under the authority of Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954), the suppressed evidence may nevertheless be used to impeach the testimony of defense witnesses as to collateral matters. Although the *Walder* doctrine has been approved by the Court of Appeals for the Second Circuit in the factual context of the particular cases considered by it,[22] other recent decisions have cast doubt upon its continuing vitality.[23]

■ Because the precedential authority of *Walder* has been so seriously attenuated and because the trend of current constitutional developments points in another direction, this Court respect-

fully declines to follow *Walder*. The Government should be restricted to using untainted evidence in the impeachment of witnesses just as it is similarly restricted in making out its direct case.

In the vast majority of criminal cases, it would be more appropriate to defer making such a ruling until the trial. However, in view of the vast number of suppressed documents with which we are concerned, fairness to defendant persuasively suggests that the ruling be made as early as possible. Cf. McNabb v. United States, supra.

Defendant's motion for the return of documents is denied without prejudice to a renewal thereof after the trial. So ordered.

### 4. MOTION TO DISMISS THE INDICTMENT

A. *Negligent Suppression of Evidence*

Defendant charges that the Government's negligence as custodian of the impounded files has resulted in the loss of material and relevant documents and has left those remaining in such a state of disorder that the indictment must be dismissed. Defendant demands a pretrial evidential hearing to probe this issue fully.

■ The prosecutor's negligent suppression of material evidence tending to exculpate the defendant compels the Court to take remedial action, either by granting a new trial[24] or by dismissing the indictment.[25] In United States v.

---

**22.** See United States v. Curry, 358 F.2d 904, 910 (2d Cir.), cert. denied, 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966); United States v. Mullings, 364 F.2d 173, 175 n. 2 (2d Cir. 1966).

**23.** See Miranda v. State of Arizona, 384 U.S. 436, 477, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (dictum); People v. Kulis, 18 N.Y.2d 318, 323–324, 274 N.Y.S.2d 873, 875–876, 221 N.E.2d 541 (1966) (dissenting opinion of Keating, J.); United States v. Armetta, 378 F.2d 658, 661–662 (2d Cir. 1967) (Friendly, J.); State v. Brewton, 422 P.2d 581, 583 (Or.), cert. denied, 387 U.S. 943, 87 S.Ct. 2074, 18 L.Ed.2d 1328 (1967); Gaertner v. State, 35 Wis.2d 159, 150 N.W.2d 370 (1967). But see United States ex rel. Kulis v.

Mancusi, 272 F.Supp. 261 (W.D.N.Y.), aff'd 383 F.2d 405 (2nd Cir. 1967).

The *Walder* doctrine has also been criticized by text writers as being both constitutionally unsound and violative of the rule proscribing impeachment on collateral matters. Wigmore, Evidence § 15, p. 40 (3d ed. Supp.1964). See also, Note, The Impeachment Exception to the Exclusionary Rules, 34 U.Chi.L.Rev. 939 (1967).

**24.** United States v. Consolidated Laundries Corporation, 291 F.2d 563, 570 (2d Cir. 1961); Trimble v. State of New Mexico, 75 N.M. 183, 189, 402 P.2d 162 (1965).

**25.** United States v. Heath, 147 F.Supp. 877 (D.Hawaii, 1957), appeal dismissed, 260 F.2d 623 (9th Cir. 1958).

Consolidated Laundries, 291 F.2d 563 (2d Cir. 1961), the trial judge had ordered the Government to turn over to the defense all documents in its possession relating to a certain prosecution witness' testimony. The Government, however, negligently failed to produce one file during the trial. The Court of Appeals for the Second Circuit found that the Government was "custodian of . . . [these papers] for its own benefit" and through negligence had breached its duty "to keep the evidence of which it was custodian in such manner that it would be available for use upon the trial by all parties". (291 F.2d at 570.) Concluding that the negligently suppressed evidence was material to the defense, the Court reversed the conviction and ordered a new trial.

In United States v. Heath, 147 F.Supp. 877 (D.Hawaii 1957), appeal dismissed, 260 F.2d 623 (9th Cir. 1958), defendant, in a prosecution for income tax evasion, had voluntarily turned over some of his books and records to the Internal Revenue Service. Defendant moved for discovery and inspection of his papers in the Government's possession but the Government was unable to produce some of defendant's records. Finding that the lost documents were "relevant to the charges in the indictment and necessary for the preparation of the defense", the Court ordered the indictment to be dismissed. (147 F.Supp. at 878.)

Defendant's position is that the policy and rationale of these illustrative decisions require the dismissal of the indictment. On the other hand, the Government, in distinguishing the above-cited cases, points out: that the Clerk of the Court and not the prosecutor has had and has custody of the documents; that various civil litigants have used these files since November 1959 and, there-fore, responsibility for any alleged loss is diffuse; that no representative of the United States Attorney's Office or the Securities and Exchange Commission inspected the records until July 1961; and that, rather than being negligent, the Government has exercised the utmost care with respect to the documents.

■ The Court need not decide, at this time, whether the Government was in fact the custodian of the files and, if so, whether it was negligent with respect to the security of the records. At this stage of the case, defendant has failed to make an adequate factual showing that documents material to his defense which were in the impounded files at the time of the illegal search and seizure are now missing.

Defendant's moving papers contain much conclusory language declaring important records lost. But only one of the affidavits submitted by defendant purports to be based upon personal knowledge of one who actually witnessed the state of the records prior to the seizure and at the present time.[26] In this affidavit, Curtis Carter Whitney avers that various documents which he believes were in Bucks County in 1959 are now missing. The force of this belief is, however, blunted by his further statement: "I have not, however, made a thorough search of the files at Foley Square for these items". (Affidavit of Curtis Carter Whitney, p. 5, attached to defendant's supplemental affidavit).

Controverting defendant's position, Robert S. Stitt, Esq., attorney for the Chapter X trustee of Equitable Plan Company—who was actually present at the time of the search and seizure—has given impressive testimony before this Court that "these records are complete and they are in the same shape as they

---

**26.** The affidavit of defendant is of little aid in resolving this question because his last contact with the impounded files was in 1957, two years prior to the search and seizure. As a hypothetical possibility, it may be that some documents contained in the files in 1957 were no longer there in 1959 particularly in view of the movement of the records from New York City to Teaneck, New Jersey and thence to Bucks County, Pennsylvania.

were when originally brought into custody". (Record of Argument, August 29, 1967, p. 509). Mr. Stitt, moreover, pointed out that the impounded files never contained all relevant and known records. (Record of Argument, August 29, 1967, pp. 507–508).

In view of these conflicting factual averments, the Court cannot conclude on the moving papers before it that documents are indeed missing. Immediate dismissal of the indictment is, therefore, not justified.

■■■■ Nor has defendant sufficiently shown why a pretrial hearing is needed. No specification has been made of prospective witnesses who might supply additional facts as to the state of the documents. Defendant blandly urges that such a hearing be held in order to subpoena witnesses, particularly attorneys for various civil litigants, who are "reluctant to volunteer affidavits". (Supplemental Memorandum, p. 38). Defendant's moving papers do contain detailed statements by these attorneys. It is not clear what new facts might be adduced by holding an evidential hearing.

In the absence of a more specific showing of need, the Court is reluctant to delay the trial further by holding a lengthy pretrial hearing. Such a hearing is likely to last longer than the trial itself because defendant will first be required to prove that documents in the files at the time of the seizure are now actually missing. In view of the magnitude of the records, such an inquiry will unquestionably be protracted.

Assuming, *arguendo*, that the Court should find that documents are missing and that this condition is attributable to governmental misfeasance or nonfeasance, the issues of materiality and relevancy of the missing documents would then have to be decided. Such issues cannot be resolved *in vacuo:* disclosure of both the Government's and defendant's cases would furnish a realistic frame of reference within which the significance of missing documents, if any, can be adjudged.

In a prior ruling on defendant's motion for a pretrial evidential hearing on the related issue of taint, this Court outlined the desiderata favoring a posttrial rather than a pretrial hearing. United States v. Birrell, 269 F.Supp. 716, 727–728 (S.D.N.Y.1967). These considerations are equally applicable in determining the timing of a hearing on the issue of negligent suppression.

In addition to involving a vast expenditure of judicial time, a pretrial hearing might not fully resolve the questions of the materiality and relevancy of any lost documents. The Government has represented that it has a witness pool of undefined size, from which particular persons will be called as the exigencies of the trial require. Consequently, any disclosure by the Government at a pretrial hearing would be only tentative. Should there be a shift in the Government's trial strategy, supplemental hearings either during or after trial would have to be held. It is desirable to avoid such a fragmented approach.

Another salient factor militating against the holding of a hearing before trial is the real possibility that defendant's right to a fair trial may be prejudiced. If, in order to show materiality and relevancy, defendant discloses his entire defense and his motion to dismiss is denied, the prosecution would obtain an unfair advantage at the trial in chief. That a similar disclosure of the prosecution's case would result is of no corresponding impact; the resources and flexibility of the Government are much greater than those possessed by any criminal defendant.

The Court concludes that defendant's motion to dismiss the indictment should be denied without prejudice to its renewal at trial. In the suppositious event of conviction, a post-trial hearing can be held if the Court deems it necessary, to fully explore this issue. The issues of materiality and relevancy can then be

examined in the context of the trial record. Should it be found that negligent suppression of material evidence has occurred, the Court can order the appropriate relief, such as dismissal of the indictment or a new trial. Of course, in the event of acquittal, the need for such a hearing would be mooted.

The Court naturally is reluctant to subject the defendant to the formalities of an unnecessary trial. In the present case, however, defendant has not demonstrated that the trial will be an empty and futile gesture. In any event, full protection of defendant's rights can be achieved by deferring any hearing until after trial.

Defendant's motion based upon alleged negligent suppression of evidence is denied without prejudice to its renewal at or after trial. So ordered.

### B. *Taint From The Suppressed Records Pervades The Government's Case*

Defendant contends that dismissal of the indictment is necessitated because the Government will be unable to prove beyond a reasonable doubt that its trial evidence has a completely untainted and independent origin.

■ The Government has repeatedly represented that it intends to rely on lawfully obtained and uncontaminated evidence. The Court cannot rule as a matter of law that the Government will not fulfill its obligation. See, e. g. United States v. Harrison, 265 F.Supp. 660, 662 (S.D.N.Y.1967); United States v. Avila, 227 F.Supp. 3, 8 (N.D.Cal.1963).

Defendant's motion based on alleged taint is denied without prejudice to its renewal at or after trial. So ordered.

### C. *Denial of A Speedy Trial*

Accusing the Government of materially delaying the trial, defendant claims that he has been deprived of his Sixth Amendment right to a speedy trial. Defendant argues that a pretrial hearing is necessary to determine this issue.

■■ The right to a speedy trial is considered to be defendant's personal right; it is deemed waived unless promptly asserted. A defendant must demand a speedy trial in order to preserve his Sixth Amendment right. United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958); United States v. Maxwell, 383 F.2d 437, (2d Cir., August 8, 1967). The defendant at bar, never having demanded a speedy trial, has waived this Sixth Amendment right.

■ The demand rule, consistently followed in this circuit, serves the salutary purpose of insuring that the right to a speedy trial is not employed "as a sword for defendant's escape, but rather as a shield for his protection". Note, The Right to a Speedy Criminal Trial, 57 Colum.L.Rev. 846, 853 (1957). The requirement of a demand is premised "on the almost universal experience that delay in criminal cases is welcomed by defendants as it usually operates in their favor". United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963). Precedent and policy require the denial of defendant's motion.

Other circumstances strengthen that conclusion. Defendant has not shown that the six-year delay since the indictment was returned on July 20, 1961 is attributable to the Government. It would appear quite convincingly, at least on the present record, that defendant's own acts were the primary factor in the delay.

From July 20, 1961 until April 23, 1964—the period between indictment and arrest—defendant was residing in Brazil. Whether defendant could have returned voluntarily to the United States during this time is a question that need not be decided at this time. There is no evidence before the Court on the basis of which the Government could be blamed for the pre-arrest delay of almost three years. Defendant's assertion—that the Government prevented him from returning to the United States—is unsupported by a single affidavit of any person having personal knowledge. This same con-

tention was categorically rejected by the referee in the disbarment proceeding brought against defendant by the Association of the Bar of the City of New York in 1961. The referee's finding was subsequently approved by the Appellate Division of the New York State Supreme Court. In the Matter of Birrell, 13 A.D.2d 220, 215 N.Y.S.2d 293 (1st Dept. 1961).[27]

Since defendant's return to the United States, the trial of the indictment has been delayed over three years. Of this period, however, it is clear that approximately thirty-three months' delay was brought about either by defendant's numerous and, in some respects repetitive, motions or his temporary inability to proceed because of change of counsel. The Sixth Amendment does not proscribe all delay but only unreasonable delay; "and a defendant cannot exploit a delay which is attributable primarily to his own acts or to which he has consented." United States v. Lustman, supra, 258 F.2d at 477.

The remaining ten months of delay was caused by the suspension of proceedings, except for emergency matters, from December 1965 until September 1966 pending the appointment by the chief district judge of a Rule 2 judge. Because the case-load in this district is extremely heavy, there are times when the Rule 2 assignment of a complex and protracted case (like the present one) must await the availability of a trial judge. Under all of the attendant circumstances of the case, the Court cannot conclude that this delay is undue. Defendant's actions have delayed the commencement of the criminal trial for thirty-three months. Moreover, if defendant was, in fact, a fugitive from justice, he is responsible for almost three years of additional delay.

In any event, this defendant's claim is barred by the demand rule, as was that of the defendants in United States v. Lustman, supra, and United States v. Maxwell, supra, where there were unreasonable delays of four and five years respectively.

Defendant's motion to dismiss based upon alleged denial of a speedy trial is denied. So ordered.

## 5. MOTION TO DISMISS BECAUSE OF ALLEGED DEFECTS IN THE GRAND JURY SELECTION

Defendant moves to dismiss the indictment on the ground that the grand jury did not represent a fair cross-section of the community in the Southern District of New York. He asserts that Negroes, Puerto Ricans and members of the so-called lower socio-economic strata of the community have been systematically and intentionally excluded from the array.

Two specific procedures are challenged: the use of voter registration lists as the primary source of names of grand jurors and the practice of the jury clerk to excuse prospective jurors who demonstrate that such service would cause undue financial hardship.

The method by which grand jurors are selected in the Southern District of New York has been examined and approved in numerous decisions in this circuit. Both of defendant's contentions have been reviewed and rejected. United States v. Kelly, 349 F.2d 720, 778–779 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S. Ct. 1467, 16 L.Ed.2d 544 (1966); United States v. Bowe, 360 F.2d 1, 7 (2d Cir.), cert. denied, 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966); United States v. Agueci, 310 F.2d 817, 833–834, 99 A.L.R. 2d 478 (2d Cir. 1962), cert. denied, sub nom. Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); United States v. Greenberg, 200 F.Supp. 382 (S.D.N.Y.1961); United States v.

---

27. The referee's additional finding that defendant was in fact a fugitive from justice was similarly approved by the Appellate Division as being fully supported by the evidence. In the Matter of Birrell, supra.

As previously noted, the disposition of the present motion does not require the determination of this issue.

Van Allen, 208 F.Supp. 331, 335–336 (S.D.N.Y.1962).[28]

█ The use of voter registration lists as the primary source for jurors has been consistently upheld as constitutional since "it does not discriminate against any identifiable racial, social or economic group". United States v. Bowe, supra, 360 F.2d at 7. Those persons who are not registered to vote do not constitute such an identifiable group because it is "undisputed that in New York registration is available to all qualified persons, with strict legal prohibition against discrimination based on race, sex, religion, national origin or wealth. United States v. Van Allen, supra, 208 F.Supp. at 335–336.

█ The excusing of prospective jurors because of financial hardship has also received judicial approval. United States v. Flynn, 216 F.2d 354, 386–387 (2d Cir. 1954). Moreover, it has been repeatedly recognized that "as a practical matter and subject to proper supervision by the District Courts, jury officials must be vested with a large measure of discretion to determine whether a particular individual should or should not be excused from jury service." United States v. Kelly, supra, 349 F.2d at 779.

Since defendant has failed to set forth any facts which have not been fully considered and rejected in prior cases, the principles of *stare decisis* compel this Court to deny defendant's motion to dismiss. So ordered.

### 6. MOTION TO TAKE DEPOSITIONS

A. *Toronto Stock Exchange: Defendant's Request to Take Deposition*

█ Fed.R.Crim.P. 15(a) reads, in part: "If it appears that a prospective witness may be unable to attend or prevented from attending a trial * * * ". The reasonable interpretation of the foregoing provision is that the movant must submit some factual basis, either in the form of evidence or good hearsay, reasonably implying that the "prospective witness may be unable to attend or prevented from attending a trial".

In the present case, no such showing —however liberally the motion papers are construed in favor of defendant—has been made either in the moving affidavit of defendant's attorney or in his supplemental affidavit. The latter (at pp. 26–27) simply contains his *ipse dixit*: "clearly the Toronto Stock Exchange * * * will be 'unable to attend or prevented from attending' " the trial.

█ The naked fact that the Toronto Stock Exchange is located in Canada does not, by and of itself, constitute an adequate basis for the inference that it "may be unable to attend" within the meaning of Rule 15(a). A contrary interpretation would mean that Rule 15(a) should be applied as automatically authorizing the taking of the deposition of any foreign prospective witness upon the mere allegation that the witness is located in a foreign country, assuming that the other requirements of Rule 15(a) have been satisfied.

█ Rule 15(a) contemplates, according to the Advisory Committee Notes, that in criminal cases depositions will be used "only in exceptional situations," (Advisory Committee's Note to Rule 15(a)); that is, Rule 15(a) does not constitute a mandatory automatic provision requiring the Court to order the deposition of any foreign witness.

Interpreting Rule 15(a), in a somewhat different though analogous factual context, Chief Judge Aldrich in In re United States, 348 F.2d 624, 625 (1st Cir. 1965) pointed out:

"He [the defendant] made no showing with respect to their [the prospective witnesses'] ability or inability to attend the trial except the bare assertion that they might not be able to appear."

---

**28.** "The principle emerging from our Circuit's consideration of the problem of juror selection is that when the selection process is inherently neutral and non-discriminatory the grand jury resulting is constitutionally valid." United States v. Elliott, 266 F.Supp. 318, 327 (S.D.N.Y. 1967).

The Court of Appeals, vacating the order below granting defendant's motion to take the depositions, declared that the District Court's "interpretation of Rule 15(a)" was "plainly wrong" because, *inter alia,* its order "made the provision regarding inability to attend the trial meaningless for all practical purposes". (348 F.2d at 626).

 The statement in defendant's attorney's supplemental affidavit (p. 27) that "certainly none [of the six prospective deponents including the Toronto Stock Exchange] have volunteered to come at their own expense" is a far cry from a factual showing that the Toronto Stock Exchange may be unable to attend. Rule 15(a) does not require the prospective witness to volunteer to come to the trial nor does it require the prospective witness to come to the trial at its own expense. The circumlocution or innuendo employed by defendant's attorney skirts the material requirement of Rule 15(a) that it must be made to appear that the "prospective witness may be unable to attend or prevented from attending" the trial.

Moreover, the present motion could have been made long ago, instead of being filed on August 29, 1967 as one of a large number of other motions. Cf. United States v. Whiting, 308 F.2d 537, 541 (2d Cir. 1964), cert. denied, sub nom. Crowe v. United States, 372 U.S. 909, 83 S.Ct. 722, 9 L.Ed.2d 718 (1965).

It should be pointed out that a separate motion by defendant, made concurrently with the instant motion, for discovery and inspection has been granted to the extent, *inter alia,* that defendant is permitted discovery and inspection of all records, documents, correspondence and underlying agreements relating to American Leduc obtained by the Government from the Toronto Stock Exchange.

 In the exercise of its discretion, United States v. Whiting, supra, at 541, the Court hereby denies the appli-

cation to take the deposition of the Toronto Stock Exchange. So ordered.

B. *American Leduc Petroleums Ltd; Defendant's Request to Take Deposition*

 Defendant's request to depose American Leduc must also be denied because he has failed to make any factual showing that the "prospective witness may be unable to attend or prevented from attending a trial". Moreover, no showing has been made that the witness has consented or will consent to be deposed, as required by Rule 15(a). United States v. Whiting, supra, at 541. In fact, it would appear that American Leduc has refused to cooperate with defendant.

Defendant's request to depose American Leduc Petroleums Ltd. is hereby denied. So ordered.

7. MOTION TO PRECLUDE CERTAIN EVIDENCE AND TO NARROW THE SCOPE OF THE INDICTMENT

Defendant moves, pursuant to Fed. R.Crim.P. 15 and 17.1 to preclude the introduction of evidence at the trial (1) that defendant was a fugitive from justice and (2) that the acts alleged in the present indictment were part of a common plan or scheme.

 Neither of the two rules cited by defendant—dealing with depositions and pretrial conferences—provides any basis or authority for the relief requested. Indeed, defendant has repeatedly stated during the oral argument that he is not requesting that a pretrial conference be held to consider these matters. (Record of Argument, August 30, 1967, pp. 667, 670, 673). Under the particular circumstances, the Court will not make a premature or anticipatory ruling as to the admissibility of this kind of evidence, which may or may not be offered. In the absence of unusual circumstances, such a determination must await the trial.

 Defendant seeks to depose four named persons presently residing in

Brazil, who allegedly are in a position to give testimony favorable to defendant with respect to the controverted issue of defendant's fugitive status. Once again, defendant has not submitted facts tending to show that the prospective witnesses "may be unable to attend or prevented from attending a trial". This request must be denied because of defendant's failure to comply with one of the indispensable requirements of Fed.R. Crim.P. 15. In Re United States, supra, 348 F.2d at 625.

 Defendant also seeks permission to introduce into evidence at the trial the depositions of five named persons now on file with the Clerk of the Court. This request is premature because Fed.R.Crim.P. 15(e) specifically provides:

> "*At the trial* or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears: That the witness is dead; or that the witness is out of the United States \* \* \*; or that the witness is unable to attend or testify because of sickness or infirmity; or that the party offering the deposition has been unable to procure the attendance of the witness by subpoena \* \* \*" (emphasis added).

Defendant's motion is, therefore, denied without prejudice to its renewal at the trial. If defendant seeks to introduce a part or all of a deposition into evidence upon the trial, the Court will then rule on its admissibility.

 Finally, defendant seeks to compel the Government to elect which counts of the indictment it will actually try. In a prior opinion, this Court denied a similar request by defendant. United States v. Birrell, 266 F.Supp. 539 (S.D.N.Y.1967). Defendant has not indicated in the slightest why or how this present demand possesses any greater merit. See United States v. Ketchum, 320 F.2d 3, 8 (2d Cir.) cert. denied, 375 U.S. 905, 84 S.Ct. 194, 11 L.Ed.2d 145 (1963); United States v. Binstock, 37 F.R.D. 13, 16 (S.D.N.Y.1965).

Accordingly, defendant's motion is denied. So ordered.

## 8. MOTION FOR DISCOVERY AND INSPECTION

This motion (originally filed on September 4, 1964, revived by notice dated October 28, 1966 and supplemented by an additional notice and affidavit, sworn to August 18, 1967) seeks discovery and inspection of thirty-two items, "(a)" to "(ff)".

The motion is disposed of as follows:

*Item (a)*

This item is consented to by the Government.

*Item (b)*

 This item is not within the possession, custody or control of the Government. Moreover, no showing has been made as to the materiality of the minutes of meetings held after the year the indictment was filed, 1961. This item is denied.

*Item (c)*

The Government consents to the inspection of the annual reports of American Leduc for the years 1954, 1955, 1957 and 1958, which are the only documents relating to Leduc's financial condition in the Government's possession, custody or control. The other portions of this item are denied.

*Items (d), (e), (f), (h), (j), (l), (n)*

These items are denied except to the extent that the Government has consented thereto. Defendant has failed to make the requisite showing required by Rule 16(b) that the records sought are material to the preparation of his defense and that his request is reasonable. Moreover, defendant's requests are so broadly phrased that the Government understandably claims that it is virtually impossible to determine whether or not the Government has such documents in its possession, custody or control.

The Government's aforesaid consent covers the records relating to American

Leduc, J. A. Winston & Co. and S. A. Brooks & Company, to the extent that such records are in the possession of the United States Attorney.

*Items (g), (k), (m)*

The Government has consented to these items. Accordingly, they are granted.

*Item (i)*

 This item is denied. The moving affidavit of defendant's then attorney, sworn to September 1, 1964 (page 6), simply states that said attorney "believes that they [Items (a) to (p)] are material to the preparation of the defense of Lowell M. Birrell". In view of defendant's failure to submit even a minimal showing of materiality and reasonableness of the request as required by Rule 16, this item is denied.

*Item (o)*

 This item is denied for the reason that it represents an omnibus request without any showing of materiality. It would also appear that this item covers documents seemingly within the exception of "internal government documents" and, as such, exempt from a defendant's right of discovery under Rule 16(b).

*Item (p)*

 This item is denied inasmuch as the transcripts of testimony sought fall within the exception that Rule 16(b) does not authorize the discovery or inspection of statements made by prospective Government witnesses to agents of the Government, except as provided in the Jencks Act, 18 U.S.C. Section 3500.

*Items (q), (s), (t), (u), (z), (bb), (cc)*

These requests are denied except to the extent hereinafter indicated.

With respect to Item (q) in so far as that item relates to testimony and statements by defendants other than Birrell, they come within the exception in Rule 16(b), that the Rule does not authorize the inspection of statements made by prospective Government witnesses or agents of the Government, except as provided in the Jencks Act.

To the extent that Item (q) relates to testimony and statements of Birrell himself, he has failed to make any showing of need. Birrell has simply made a bare request without any elaboration or explanation or reference to circumstances that should induce the Court to exercise its discretion by granting the particular request. Accordingly, (q) is denied in all respects.

Item (s) is denied for the same reasons expressed with respect to Item (q).

Item (t) seeks the results obtained by the Government from "the use of electronic devices" used in the investigation of the defendant or any of the other defendants with reference to American Leduc. This item is denied in view of the representation made by the Government in the Supplemental Affidavit of Assistant United States Attorney Hammerman, sworn to September 19, 1967, page 28, paragraph 65.

Item (u) is denied for the reason that Rule 16(b) does not authorize the discovery or inspection of statements made by prospective Government witnesses to Government agents, except as provided in the Jencks Act.

 Item (z) is denied for the reason that it represents an improper attempt to obtain the Grand Jury testimony of all witnesses through the medium of pre-trial discovery. Under the currently prevailing rule, the Grand Jury testimony of a Government witness is producible in the same manner as Jencks Act statements.

Item (bb) is denied for the reason that the requested material is producible in accordance with the procedure prescribed by the Jencks Act.

Item (cc) is denied for the reason that it falls within the exception of Rule 16 (b) relating to reports, memoranda or other reports of internal documents made by Government agents in connection with the investigation of the case.

*Item (r)*

This item is granted to the extent that the Government consents to making avail-

able to the defendant the requested material if and when any results or reports of scientific tests or experiments made in connection with this case come within the possession, custody or control of the Government.

*Item (v)*

This item is granted to the extent that the Government consents to the discovery and inspection of the documents referred to in said item and which are in existence and in the possession, custody or control of the Government.

*Item (w)*

This item is granted to the same extent that Item (v) has been granted.

*Item (x)*

This item is granted to the same extent that Item (v) has been granted.

*Item (y)*

 The demand set forth in this item is denied. It is a dragnet request for all evidence in the Government's possession or control "favorable to or tending to exculpate or establish any defenses to prosecution of defendant". The denial of this demand is predicated upon the rationale expounded in such cases as United States v. Cobb, 271 F.Supp. 159 (S.D.N.Y.1967); United States v. Gleason, 265 F.Supp. 880 (S.D. N.Y.1967); United States v. Leighton, 265 F.Supp. 27, 35 (S.D.N.Y.1967); United States v. Manhattan Brush Co., Inc., 38 F.R.D. 4 (S.D.N.Y.1965). See also, 34 F.R.D. 155, 171–173 (1963).

*Item (aa)*

 This item is denied in all respects as an unjustified dragnet attempt to compel the Government to reveal the names and addresses of all its prospective trial witnesses.

*Item (dd)*

Item (dd) is hereby granted to the extent that defendant is granted discovery and inspection of all records, documents, correspondence and underwriting agreements relating to American Leduc Petroleums Limited obtained by the Government from the Toronto Stock Exchange; and it is so ordered. Compliance with this order shall take place with all deliberate speed at the United States Court House, Foley Square, during regular business hours and the defendant shall be afforded reasonable opportunity to copy or photograph any such records and to make extracts therefrom.

*Item (ee)*

This item is hereby granted to the extent that defendant shall be permitted to conduct a discovery and inspection of all papers and records within the possession, custody or control of the Government concerning transactions in the common stock of American Leduc Petroleums Limited which, at any time, were kept by or on behalf of Norris Allen Limited, Hydro Fiscal Co., and S. J. Brooks & Company; and it is so ordered. Compliance with this order shall take place with all deliberate speed at the United States Court House, Foley Square, during regular business hours, and the defendant shall be afforded reasonable opportunity to copy or photograph any such records and to make extracts therefrom.

*Item (ff)*

 Item (ff) is denied for the reason that defendant has failed to make the requisite showing of materiality to the preparation of his defense and that the request is reasonable. Moreover, the policy underlying the provision in Rule 16(b) which excepts discovery and inspection of internal government documents is applicable to information obtained by our Government agencies from foreign law enforcement agencies.

The foregoing opinion setting forth the Court's disposition of defendant's motion for discovery and inspection constitutes an order.

## APPENDIX

This appendix to the opinion consists of a chronology prepared jointly by counsel for the Government and the defense at the Court's request.*

### CHRONOLOGY OF PROCEEDINGS RE 61 CR. 692 AND NEW YORK COUNTY SUPREME COURT INDICTMENT 2490/1959

| | |
|---|---|
| *October 4, 1957 | Birrell served with subpoena to testify in SEC v. Swan-Finch Oil Corporation |
| *November 20, 1957 | Bench warrant issued for arrest of Birrell in connection with SEC v. Swan-Finch Oil Corporation |
| *January 2, 1958 | Swan-Finch Oil Corporation petition under Chapter X filed in the Southern District of New York |
| *December 2, 1958 | Equitable Plan Company petition for ancillary relief under Chapter V filed in the Southern District of New York |
| July 1, 1959 | Indictment 2490/1959 filed in New York County Court of General Sessions |
| July 24, 1959 | Defendant's files seized from office of Jonathan Dunn, Esq., Furlong, Pennsylvania |
| August 22, 1959 | Defendant's files seized from office of Jonathan Dunn, Esq., Furlong, Pennsylvania |
| August 24, 1959 | Defendant's files seized from premises under control of Jonathan Dunn, Esq., at Schulberg Farm, New Hope, Pennsylvania |
| October 16, 1959 | Judge Palmieri enters order directing transfer of files seized August 22 and 24, 1959 from the Eastern District of Pennsylvania to the custody of the Clerk of the United States District Court for the Southern District of New York and granting access to various private parties and Government officials |
| November 10, 1959 | Judge Lord of the Eastern District of Pennsylvania enters order directing transfer of the files seized August 22 and 24, 1959 from the Eastern District of Pennsylvania to the custody of the Clerk of the United States District Court for the Southern District of New York and granting access to various private parties and Government officials |

* Items preceded by an asterisk are inserted at the insistence of the Government; defendant considers them to be irrelevant and incomplete references to matters outside the scope of matters being considered by the Court. This chronology is submitted on the mutual understanding that nothing contained therein, whether or not preceded by an asterisk, shall be deemed an admission for any purpose against the Government or Birrell.

| | |
|---|---|
| *December 23, 1959 | Disbarment petition before Appellate Division, First Department, served on Birrell |
| *January 5, 1960 | Notice of appearance filed for Birrell in disbarment proceeding |
| January 20, 1961 | Judge Palmieri signs order on affidavit of attorneys for Equitable Plan Company trustee authorizing removal of "numerous" unspecified original documents from files seized from defendant as set forth above and their delivery for use by Securities and Exchange Commission |
| *March 28, 1961 | Birrell disbarred by Appellate Division, First Department |
| *July ? , 1961 | Judge Palmieri orally authorizes United States Attorney to take possession of and to inspect defendant's files seized as set forth above |
| July 20, 1961 | Indictment 61 Cr. 692 (American Leduc) filed in this Court and issuance of bench warrant for arrest of Birrell ordered |
| August 11, 1961 | All defendants except Birrell plead not guilty to American Leduc indictment |
| April 23, 1964 | Defendant Birrell surrenders and is arrested; appears in Southern District and pleading adjourned at his request |
| May 8, 1964 | William B. Pennell, Esq. assigned as counsel to defendant Birrell; defendant Birrell pleads not guilty to all counts; remanded to jail (at defendant's request no bail set) |
| May 8, 1964 | Defendant moves for order directing removal of alleged paid informer Chester Zochowski, a/k/a "Sureshot" Chester Gray, from cell of defendant at Federal Detention Headquarters |
| May 12, 1964 | After a hearing Judge Tyler denies motion of defendant for removal of "Sureshot" Chester Gray upon representation of Government that it will cooperate in seeking such removal |
| May 28, 1964 | Defendants Gilbert, Winston, and Irving and Albert Bernstein change not guilty plea to guilty with respect to counts 15, 24, 25 and 32; sentencing adjourned without date and no presentence reports ordered |
| July 1, 1964 | Defendant moves for sixty days additional time for filing of pretrial motions |
| July 6, 1964 | After a hearing Judge Bryan grants motion for extension of time, all motions to be returnable by September 21, 1964, and all papers to be served on the United States Attorney by September 7, 1964 |

| | |
|---|---|
| September 4, 1964 | Defendant moves for (1) dismissal of indictment on ground of taint and production of grand jury minutes in connection therewith; (2) dismissal of counts 2 through 16 of the indictment, or order compelling the Government to elect which one of counts 1 through 16 it intends to try, on the ground that such counts all charge one and the same offense; (3) order striking certain surplusage; (4) a bill of particulars; and (5) certain discovery and inspection |
| September 9, 1964 | Defendant moves for order suppressing for use as evidence and returning to him files seized as set forth above on July 24, 1959 and August 22 and 24, 1959 |
| September 11, 1964 | Defendant moves for order sealing files seized as set forth above and located in Room 501 of the Courthouse pending determination of motion for suppression and return |
| September 21, 1964 | Five motions (all except that for suppression and return of files) regarding American Leduc indictment marked off calendar on consent of all counsel subject to restoration pending determination of motion for suppression and return |
| September 22, 1964 | After a hearing Judge Murphy denies defendant's motion seeking to seal files pending determination of motion for suppression and return |
| October 1, 1964 | Conference of defendant's counsel and United States Attorney before Judge Herlands in Chambers from 10:45 A. M. to 1 P. M. to discuss defendant's position that if his motion for suppression and return were to come before Judge Herlands as scheduled defendant would move to recuse pursuant to 28 U.S.C. § 144; same afternoon United States Attorney requests and defendant consents to six day adjournment of motion at which time it would come before Judge Cannella |
| October 19, 1964 | Motion to suppress and return seized files argued before Judge Cannella |
| October 27, 1964 | Defendant requests of Judge Cannella opportunity to submit certain affidavits in support of motion for suppression and return; Judge Cannella denies motion for suppression and return without prejudice to its renewal on or before November 16, 1964 to be heard on November 30, 1964 |
| October 30, 1964 | Defendant pleads not guilty to New York County indictment 2490/1959 |

| | |
|---|---|
| November 16, 1964 | Defendant's motion for suppression and return renewed |
| November 30, 1964 | Defendant's motion for suppression and return argued before Judge Wyatt |
| January 6, 1965 | Defendant moves for suppression and return of evidence in New York County case |
| February 11, 1965 | Defendant's bail fixed by Judge Weinfeld at $150,000 |
| March 8, 1965 | Defendant's motion in New York County case for suppression and return of evidence denied by Judge Schweitzer, holding that issue need not be decided at that time |
| April 20, 1965 | Upon application of New York County District Attorney, without notification to defendant, Judge Palmieri enters orders requiring United States Marshal to bring defendant to Room 501 on April 22, 1965 and "on every weekday thereafter on which defendant requests to be present" and permitting defendant to inspect his seized files there |
| April 22, 1965 | Defendant moves in New York County case to inspect grand jury minutes or dismiss indictment |
| April 27, 1965 | Defendant moves to vacate, set aside and expunge April 20, 1965 orders of Judge Palmieri |
| May 10, 1965 | After a hearing held May 3, 1965 Judge Croake denies defendant's motion to vacate, set aside and expunge aforesaid orders of Judge Palmieri |
| May 19, 1965 | Defendant moves in New York County case to dismiss certain counts of indictment as being repetitive |
| June 1, 1965 | Defendant again moves to vacate, set aside and expunge ex parte orders of Judge Palmieri entered April 20, 1965 |
| | Defendant files affidavit of prejudice with respect to Judge Palmieri pursuant to 28 U.S.C. § 144 |
| June 3, 1965 | Defendant's motion in New York County case to inspect grand jury minutes or dismiss indictment denied by Judge Silverman |
| June 7, 1965 | Defendant's second motion to vacate, set aside and expunge ex parte orders of Judge Palmieri entered April 20, 1965 comes on to be heard before Judge Cannella, who refers it to Chief Judge Ryan |
| June 8, 1965 | Defendant's motion in New York County case to dismiss certain counts of indictment as being repetitive denied by Judge Silverman |

Defendant moves for appointment of law firm, attorney or attorneys to relieve William B. Pennell, Esq. on certain indictments including American Leduc indictment

June 11, 1965 Defendant's motion for suppression of his files as evidence seized August 22 and 24, 1959 granted by Judge Wyatt (242 F.Supp. 191)

June 15, 1965 Defendant's motion for relief of William B. Pennell, Esq. is denied by Judge Cannella without prejudice in that it appears premature since Judge Wyatt's suppression order may result in termination of prosecution

Defendant moves for reduction of bail from $150,000 to $5,000.

June 21, 1965 Government moves for reargument of Judge Wyatt's suppression order

June 25, 1965 Government's motion for reargument of suppression order is granted and upon reargument Judge Wyatt adheres to decision of June 11, 1965 (243 F.Supp. 36)

June 28, 1965 Defendant's motion for reduction of bail is granted by Judge Cannella to extent of reducing bail to $50,000, subject to further application being made within a reasonable time if such bail cannot be raised

Hearing held before Judge Wyatt on that portion of the motion for suppression and return which related to seizure of July 24, 1959, and argument heard with respect to return of documents seized August 22 and 24, 1959 already ordered suppressed

July 1, 1965 Defendant's motion for suppression and return of files seized July 24, 1959 denied by Judge Wyatt and Judge Wyatt enters order establishing procedure for return of files seized August 22 and 24, 1959 previously ordered suppressed (243 F.Supp. 38)

Defendant moves for reduction of bail from $50,-000 to $5,000

July 6, 1965 Defendant's motion for relief of William B. Pennell, Esq. is renewed and heard along with motion for reduction of bail from $50,000 to $5,-000 by Judge Bryan

July 7, 1965 After conference before him held July 2, 1965 Chief Judge Ryan enters orders identical with the orders previously entered ex parte by Judge Palmieri April 20, 1965

| | |
|---|---|
| July 27, 1965 | Defendant's motion for reduction of bail from $50,000 to $5,000 is granted by Judge Bryan to extent of reducing bail to $15,000 |
| July 30, 1965 | Defendant released on $15,000 bail |
| October 14, 1965 | Defendant by counsel representing him in New York County case moves in this Court for order returning to him certain of the files previously ordered suppressed by Judge Wyatt |
| October 25, 1965 | Defendant's motion by counsel in New York County case for return of certain of the suppressed documents is heard by Judge Cannella, who orders defendant, Government and trustees to attempt to reach agreement on return of files and pending such negotiations adjourns motion two weeks |
| October 27, 1965 | Defendant's motion for relief of William B. Pennell, Esq. is granted |
| November 8, 1965 | William J. Brennan, III, Esq. is appointed by Judge Bryan to represent defendant |
| December 2, 1965 | Government moves for appointment of judge to case for all purposes pursuant to Rule 2 |
| December 8, 1965 | Government's motion for appointment of Rule 2 judge heard by Chief Judge Ryan |
| December 13, 1965 | Motion of defendant by counsel in New York County case previously adjourned by Judge Cannella from October 25, 1965 and adjourned twice thereafter is referred by Judge Tenney to Chief Judge Ryan |
| December 15, 1965 | Chief Judge Ryan denies motion of defendant by counsel in New York County case previously heard by Judge Cannella October 25, 1965 |
| December 27, 1965 | Harold Rothwax, Esq. sends letter to Chief Judge Ryan regarding his order of December 15, 1965 |
| September 27, 1966 | Chief Judge Sugarman appoints Judge Herlands to case for all purposes pursuant to Rule 2 |
| October 17, 1966 | Pretrial conference is held before Judge Herlands |
| October 28, 1966 | Defendant moves to disqualify Judge Herlands pursuant to 28 U.S.C. § 144, moves for order directing United States Attorney to file an inventory of the files seized from defendant August 22 and 24, 1959 and renews motion filed September 4, 1964 |
| January 4, 1967 | Defendant's motion to disqualify Judge Herlands is heard |

| | |
|---|---|
| January 9, 1967 | Defendant's motion to disqualify Judge Herlands is denied (262 F.Supp. 97) |
| January 10, 1967 | Defendant's motion to dismiss counts 2–16 of the indictment is heard by Judge Herlands; defendant's motion for a bill of particulars is submitted to Judge Herlands; the Government consents to the motion seeking to strike certain surplusage; defendant's motions for discovery and inspection and for an inventory are adjourned |
| January 19, 1967 | Defendant's motion for a bill of particulars is granted by Judge Herlands only to the extent to which Government has consented (263 F.Supp. 113) |
| February 15, 1967 | Pretrial conference held before Judge Herlands |
| February 27, 1967 | Defendant moves for pretrial hearing with respect to question of taint |
| March 14, 1967 | Defendant's motions for an inventory and pretrial taint hearing argued before Judge Herlands |
| April 3, 1967 | Defendant's motion to dismiss counts 2 through 16 of the indictment or to compel the Government to elect one of those counts for purposes of trial is denied by Judge Herlands without prejudice to renewal at conclusion of the Government's direct case at trial (266 F.Supp. 53) |
| May 23, 1967 | Defendant's motion for an inventory and pretrial taint hearing is denied by Judge Herlands |
| May 26, 1967 | Conference held before Judge Herlands to discuss application of William J. Brennan, III, Esq. to be relieved |
| June 16, 1967 | Pretrial conference held before Judge Herlands |
| June 22, 1967 | Defendant moves for enlargement of bail limits to continental United States (excluding Alaska and Hawaii) and Provinces of Alberta, Ontario and Quebec in Canada; motion granted by Judge Herlands to extent of continental United States; pretrial conference held before Judge Herlands |
| June 29, 1967 | William J. Brennan, III, Esq. relieved and Charles N. Brower, Esq. appointed by Judge Herlands in his stead |